**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 12-1610**

———————

LUANNA SCOTT; SHUNDERIA GARLINGTON; RUTH BETH; WENDY BEVIS;
KATHERINE BRACEY; RUBY BRADY; MARIE ALICE BROCKWAY;
VICKIE CLUTTER; DIANE CONAWAY; JUDY CORROW; TRACI DAVIS;
CAROL DINOLFO; REBECCA DIXON; PAMELA EWALT; NANCY FEHLING;
TERESA FLEMING; IRENE GRACE; DOROTHY HARSON; CHARLENE HAZELTON;
SHELLY HUGHES; CHRISTAL J. JOSLYN; ADA L. KENNEDY;
NEITA LAFRENIERE; MARGIE A. LITTLE; CAROL MARTIN;
LEANNE MAXWELL; WANDA MAYFIELD; DORIS MOODY; VANESSA L. PEEPLES;
VERONICA PERRY-PREDDIE; RUTH ELLEN PHELPS; SHEILA PIPPIN;
LANA RADOSH; MICHELLE RODGERS; VADA ROSE; VICKEY JO SCRIVWER;
LINDA R. SILVA; SHARON SIPES; NANCY SMITH; MARIE E. SPELLISSY;
SYLVIA C. TENORIO; JUDY TIDRICK; BEVERLY L. TRIPLETT;
CAROL SUE VANFLEET; DEBBIE VASQUEZ; CLAIRE WHITE;
BONNIE WILLIAMS; CINDY MARIE ZIMBRICH,

        Plaintiffs - Appellants,

   and

LINDA L. FULMER; JEAN MACQUARRIE; HELEN ZIMMERMAN,

        Plaintiffs,

   v.

FAMILY DOLLAR STORES, INC.,

        Defendant - Appellee.

———————

Appeal from the United States District Court for the Western
District of North Carolina, at Charlotte.  Max O. Cogburn, Jr.,
District Judge.  (3:08-cv-00540-MOC-DSC)

———————

Argued:  May 14, 2013        Decided:  October 16, 2013

———————

Before WILKINSON, GREGORY, and KEENAN, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion. Judge Gregory wrote the majority opinion, in which Judge Keenan joined. Judge Keenan wrote a concurring opinion. Judge Wilkinson wrote a dissenting opinion.

**ARGUED**: Robert L. Wiggins, Jr., WIGGINS, CHILDS, QUINN & PANTAZIS PC, Birmingham, Alabama, for Appellants. John Robbins Wester, ROBINSON, BRADSHAW & HINSON, P.A., Charlotte, North Carolina, for Appellee. **ON BRIEF**: Gerald L. Maatman, Jr., David Bennet Ross, Rebecca S. Bjork, SEYFARTH SHAW LLP, New York, New York; David C. Wright, III, Adam K. Doerr, ROBINSON, BRADSHAW & HINSON, P.A., Charlotte, North Carolina, for Appellee.

2

GREGORY, Circuit Judge:

In this sex discrimination and equal pay action filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and Section 216(b) of the Equal Pay Act of 1963, 29 U.S.C. § 206(d), Appellants appeal the district court's grant of Family Dollar Stores, Inc.'s ("Family Dollar") motion to dismiss and/or strike class claims under Federal Rules of Civil Procedure 12(c), 12(f), and 23(d)(1)(D), and the district court's denial of Appellants' first motion to amend their complaint. We find that the district court's denial of leave to amend the complaint was based on an erroneous interpretation of Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011), and the denial was thus an abuse of discretion. Without resolving the class certification issue, we reverse and remand for the district court to consider whether, based on our interpretation of Wal-Mart, the proposed amended complaint satisfies the class certification requirements of Federal Rule of Civil Procedure 23.

I.

Family Dollar operates a chain of over 7,000 stores in more than forty states. Its operations are divided "into 95 regions, each run by a vice president, and then into districts, each run by a district manager. A district, which can vary in size from

3

a single city to an area within multiple States, includes 10 to 30 retail stores, each run by a salaried store manager." Grace v. Family Dollar Stores, Inc., 637 F.3d 508, 510 (4th Cir. 2011). Family Dollar has approximately 400 district managers.

Appellants are fifty-one named plaintiffs and a putative class consisting of females who are, or have been, store managers of Family Dollar stores. Appellants primarily allege they are paid less than male store managers who perform the same job, requiring the same skill, responsibility and effort, under similar working conditions. In relevant part, Count I of their complaint asserts a disparate impact claim predicated on the following assertions:

> Defendant engages in centralized control of compensation for store managers at the corporate level of its operations.
> . . .
>
> Defendant's pay decisions and/or system includes subjectivity and gender stereotyping that causes disparate impact to compensation paid to female store managers. Plaintiffs are aware, at this time, of no other criteria which causes such disparate impact other than gender bias, subjectivity and stereotyping. Plaintiffs are unaware, at this time, of any other specific criteria that are capable of separation and job relatedness.

Count II alleges a pattern-or-practice of disparate treatment in violation of Title VII, and asserts that Family Dollar, who "engages in centralized control over compensation of store managers," "willfully violated Title VII by paying the

4

plaintiffs and other similarly situated females [] wages [unequal] to . . . similarly situated males." Count IV asserts a violation of the Equal Pay Act. Appellants seek injunctive and equitable relief, back pay, attorneys' fees and costs, and punitive damages.

In 2008, Appellants filed their complaint in the U.S. District Court for the Northern District of Alabama. Upon a grant of Family Dollar's motion to dismiss or transfer, the case was transferred to the U.S. District Court for the Western District of North Carolina. In opposing the motion to dismiss but consenting to transfer, Appellants cited Dukes v. Wal-Mart, Inc., 509 F.3d 1168 (9th Cir. 2007) on reh'g en banc sub nom. 603 F.3d 571 (9th Cir. 2010), pointing out that "[t]he Ninth Circuit has now affirmed certification of such a nationwide class having virtually identical claims of sex discrimination in pay to those brought in this case." As is relevant here, the Ninth Circuit's Dukes decision was subsequently reversed by the Supreme Court in Wal-Mart, 131 S. Ct. 2541.

Following the transfer, Family Dollar filed a motion for partial judgment on the pleadings, arguing that Appellants would be unable to satisfy the class action requirements in Rule 23(b). The filing of this motion had the effect of staying discovery. The district court denied Family Dollar's motion without prejudice, holding that the class allegations in the

5

complaint satisfied the pleading standards as established in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2007). The court further found that a fully developed evidentiary record was necessary to make findings as to class certification.

In July 2010, Family Dollar moved for summary judgment, but the court stayed the motion pending the completion of discovery. In August 2010, Family Dollar moved for a protective order with respect to class certification discovery, which the court denied. From January to July 2011, the parties unsuccessfully tried to resolve their dispute through mediation.

Following re-assignment of the case to a different judge, in September 2011, Family Dollar filed a motion to dismiss and/or strike the class allegations pursuant to Rules 12(c), 12(f), and Rule 23(d)(1)(D). Family Dollar argued that Wal-Mart, which was issued by the Supreme Court in June 2011, foreclosed Appellants' class allegations and the monetary relief sought in the complaint.

Appellants opposed the motion to dismiss and moved the court for leave to file their first amended complaint,[1] arguing that the proposed amended complaint "elaborate[s]" on the

---

[1] Family Dollar's motion to dismiss and Appellants' motion for leave to amend the complaint were filed before the deadlines to end class certification discovery and to file a motion to certify the class.

6

original complaint's allegation of "centralized control of compensation for store managers at the corporate level." In the proposed amended complaint, Appellants allege and challenge at least four company-wide policies. First, Appellants assert the existence of a mandatory salary range for Store Managers set annually by the corporate headquarters, which locks in prior disparities between male and female Store Managers' compensation. Only corporate Vice Presidents can grant exceptions above the salary range, and they grant these exceptions disproportionally in favor of men. Second, Appellants allege the existence of an annual pay raise percentage set by corporate headquarters that corresponds to performance ratings. Regional Managers and Divisional Vice Presidents grant exceptions above the pay raise percentage, and "significantly greater" exceptions are granted to men. Third, Appellants claim a "built-in headwinds" corporate-imposed compensation criteria for Store Managers that takes into account "prior experience, prior pay, quartile rankings and other specific criteria which have a disparate impact." Finally, Appellants allege the existence of a dual-system of compensation structured to pay less to persons promoted to store managers than to persons hired (from outside the company) to the same position, where "women are disproportionately promoted to Store

7

Manager [positions,] while men are disproportionately hired into such jobs."

The district court granted Family Dollar's motion to dismiss, but denied Appellants' motion for leave to amend. In granting Family Dollar's request and dismissing the class allegations, the district court first relied on Appellants' pre-Wal-Mart admission that their claims were "virtually identical" to those asserted by the Wal-Mart plaintiffs. Further, the court reasoned that "as a matter of law" under Wal-Mart, Appellants cannot satisfy the Rule 23(a) commonality requirement because they allege they were discriminated against on the basis of their gender as a result of "subjective decisions made at the local store levels." The court dismissed the Equal Pay Act class claims on the same basis. Additionally, the district court held that Appellants' claims fail to satisfy the predominance requirement in Rule 23(b)(3).

In denying Appellants' motion for leave to amend, the court first held that amendment was futile because the only source of alleged discrimination in the proposed complaint is the "discretionary pay of managers," which are "foreclosed" under Wal-Mart. Second, the court found that amendment would be prejudicial to Family Dollar because the original complaint was filed over three years prior, and the new complaint alleges a "new theory" only in an attempt to avoid Wal-Mart.

8

Appellants timely petitioned this Court under Federal Rule of Civil Procedure 23(f) for interlocutory appeal of the class certification decision.

## II.

We granted Appellants' petition under Rule 23(f), which authorizes courts of appeals to review decisions denying or granting class-action certification.[2]  Appellants did not petition us directly for interlocutory review of the decision denying leave to amend the complaint.  Appellate jurisdiction pursuant to Rule 23(f)'s interlocutory provision lies only where the subject matter of the appeal is the grant or denial of class certification.  Fed. R. Civ. Pro. 23(f); see Brown v. Nucor Corp., 576 F.3d 149, 155 n.8 (4th Cir. 2009) ("[A]ppellants

---

[2] Class certification is typically pursued under Rule 23(c), which provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Id. 23(c).  Family Dollar filed its motion to dismiss pursuant to Rule 12(c), 12(f), and 23(d)(1)(D)--rules not expressly within Rule 23(f)'s jurisdictional purview.  See Fed. R. Civ. Pro. 23(f) advisory comm. note (1998).  Nonetheless, we have jurisdiction to review the district court's grant of Family Dollar's motion to dismiss or strike the class allegations because the district court's ruling is the functional equivalent of denying a motion to certify the case as a class action.  See In re Bemis Co., Inc., 279 F.3d 419, 421 (7th Cir. 2002) (holding that the rejection of the position taken in the answer that the case could not proceed as a class action is the "functional equivalent of denying a motion to certify a case as a class action").  Family Dollar does not dispute the basis for asserting jurisdiction over the class certification decision.

cannot appeal a discovery order under [Rule] 23(f).") . Thus, Family Dollar contends we lack jurisdiction to review the district court's denial of Appellants' motion for leave to amend their complaint.

We find that under our pendent appellate jurisdiction jurisprudence, we have jurisdiction and exercise our discretion to review the denial of the motion for leave to amend. See Rux v. Republic of Sudan, 461 F.3d 461, 475 (4th Cir. 2006) (stating that pendent appellate jurisdiction, a judicially created exception to the final judgment rule, is discretionary). Pendent appellate jurisdiction is available only in two scenarios: "(1) when an issue is 'inextricably intertwined' with a question that is the proper subject of an immediate appeal; or (2) when review of a jurisdictionally insufficient issue is 'necessary to ensure meaningful review' of an immediately appealable issue." Id. (quoting Swint v. Chambers Cnty. Comm'n, 514 U.S. 35, 50–51 (1995)).

We may review the leave-to-amend decision under the "inextricably intertwined" methodology. Two separate rulings are "inextricably intertwined" if "the 'same specific question' will 'underlie both the appealable and the non-appealable order,' such that resolution of the question will necessarily resolve the appeals from both orders at once." Ealy v. Pinkerton Gov't Servs., Inc., No. 12-1252, 2013 WL 980035, at *8

10

(4th Cir. Mar. 14, 2013) (per curiam, unpublished) (quoting Myers v. Hertz Corp., 624 F.3d 537, 553 (2d Cir. 2010) (alterations omitted)). Here, the crux of the denial of class certification based on the allegations of the original complaint, and the denial of leave to amend the complaint turns on the district court's interpretation of Wal-Mart. Because the interpretation of Wal-Mart underlies both the appealable certification decision and the non-appealable leave-to-amend decision, and resolution of the interpretation of Wal-Mart will necessarily resolve both appeals, we find that our exercise of pendent appellate jurisdiction is proper.

We may also review the leave-to-amend decision under the "necessary to ensure meaningful review" methodology. An issue is "necessary to ensure meaningful review" if "resolution of the appealable issue necessarily resolves the nonappealable issue or where review of the nonappealable issue is necessary to ensure meaningful review of the appealable one." Berrey v. Asarco, Inc., 439 F.3d 636, 647 (10th Cir. 2006). Here, as detailed below, the proposed amended complaint includes specific company-wide policies that allegedly cause a disparate impact--polices not specified in the original complaint that would ensure meaningful review of the class certification decision. Thus, we exercise pendent appellate jurisdiction to review the denial of leave to amend the complaint.

11

III.

Appellants raise three primary arguments on appeal. First, Appellants contend that the district court erred in holding that pursuant to Wal-Mart, the proposed class claims in the original complaint fail to satisfy Rule 23(a)'s commonality requirement. Second, Appellants urge that the district court failed to conduct a rigorous analysis of the certification issue and failed to consider the evidence. Finally, Appellants argue that the district court abused its discretion by failing to grant leave to amend the complaint. Because we find that the proposed amended complaint contains substantial allegations of centralized control, which are necessary to satisfy the commonality requirement for class certification as set forth in Wal-Mart, we focus our review in this appeal on the district court's denial of leave to amend the complaint.

We review a district court's decision to deny leave to amend a complaint for abuse of discretion, and it is our "policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a)." Galustian v. Peter, 591 F.3d 724, 729 (4th Cir. 2010). A district court abuses its discretion "by resting its decision on a clearly erroneous finding of a material fact, or by misapprehending the law with respect to underlying issues in litigation." Quince Orchard

12

<u>Valley Citizens Ass'n, Inc. v. Hodel</u>, 872 F.2d 75, 78 (4th Cir. 1989) (internal quotation marks omitted).

The district court denied Appellants' request for leave to amend their complaint for two primary reasons. First, the district court determined that the proposed amendment was foreclosed by <u>Wal-Mart</u>, reasoning that like the original complaint, the proposed complaint pointed to subjective, individualized decisions and failed to satisfy the commonality requirement of Rule 23(a).[3]    Second, the district court found that amendment would be prejudicial to Family Dollar because the proposed complaint was filed three years after the filing of the original complaint and alleges a new legal theory in order to avoid <u>Wal-Mart</u>.  We address each rationale in turn.

A.

The district court's denial of leave to amend the complaint on grounds that it was foreclosed by <u>Wal-Mart</u> is erroneous and based on a misapprehension of the applicable law.  A review of <u>Wal-Mart</u> and its principles reveal the district court's error.

_____

[3] Under Rule 23, a class may be certified if (1) "the class is so numerous that joinder of all members is impracticable" (numerosity); (2) there are one or more "questions of law or fact common to the class" (commonality); (3) the named parties' "claims or defenses are typical of the claims or defense of the class" (typicality); and (4) the class representatives "will fairly and adequately protect the interests the class" (adequacy of representation).  Fed. R. Civ. P. 23(a).  Commonality is the only factor at issue in this appeal.  We make no findings or conclusions as to the other requirements.

13

i.

In Wal-Mart, the Supreme Court considered whether the commonality requirement under Rule 23 for class actions was satisfied in a sex discrimination suit alleging violations of Title VII.  The plaintiffs filed suit on behalf of 1.5 million current and former female employees of Wal-Mart Stores, Inc. ("Wal-Mart"), asserting that Wal-Mart's local managers exercised discretion over employees' pay and promotions in a manner that disproportionally favored male employees and had an unlawful disparate impact on the female employees.  Further, the plaintiffs alleged that Wal-Mart's failure to curtail its managers' discretion essentially amounted to unlawful disparate treatment.

In holding that the allegations were insufficient to satisfy the commonality requirement for class actions, the Court found that the plaintiffs could not demonstrate that the class members "suffered the same injury," i.e., their claims did not depend upon a "common contention" capable of "classwide resolution." Wal-Mart, 131 S. Ct. at 2551.  The Court reasoned that in the Title VII context, one individual's claim turns on "'the reason for the particular employment decision.'" Id. at 2552 (quoting Cooper v. Fed. Reserve Bank of Richmond, 467 U.S. 867, 876 (1984)).  And, in the class action context, "[w]ithout some glue holding the reasons for all those decisions together,

14

it will be impossible to say that examination of all class members' claims for relief will produce a common answer to the crucial question <u>why was I disfavored</u>." <u>Id.</u>

The Court explained that such glue might exist if: (1) the employer uses a biased testing procedure that produces a common result; or (2) there is "'[s]ignificant proof that an employer operated under a general policy of discrimination.'" <u>Id.</u> at 2253 (quoting <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 159 n.15 (1982)). The latter form was more applicable in <u>Wal-Mart</u>, yet the Court found that a "general policy of discrimination" was "entirely absent." <u>Id.</u> Specifically, the Court pointed to: (1) Wal-Mart's express policy forbidding sex discrimination; (2) expert testimony of a "strong corporate culture" that made it vulnerable to gender bias but which lacked a nexus to employment decisions; and (3) a corporate policy of allowing discretion by local supervisors over employment matters, which to the Court was "just the opposite of a uniform employment practice that would provide the commonality needed for a class action" because it was "a policy <u>against having</u> uniform employment practices." <u>Id.</u> at 2553-54.

The Court acknowledged that it previously recognized that giving discretion to lower-level employees may form the basis of Title VII liability under a disparate impact theory, but to do so, the plaintiffs must first identify the "specific employment

15

practice that is challenged." Id. at 2555 (citing Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994 (1988)). However, in the case before it, the Court noted "[o]ther than the bare existence of delegated discretion, respondents have identified no 'specific employment practice'--much less one that ties all their 1.5 million claims together." Id. Thus, the Court concluded that the commonality requirement was not satisfied.

Two principles readily derived from Wal-Mart are applicable to this case. First, Wal-Mart did not set out a per se rule against class certification where subjective decision-making or discretion is alleged. Rather, where subjective discretion is involved, Wal-Mart directs courts to examine whether "all managers [] exercise discretion in a common way with[] some common direction." Id. at 2554. Thus, to satisfy commonality, a plaintiff must demonstrate that the exercise of discretion is tied to a specific employment practice, and that the "subjective practice at issue affected the class in a uniform manner." Elizabeth Tippett, Robbing a Barren Vault:  the Implications of Dukes v. Wal-Mart for Cases Challenging Subjective Employment Practices, 29 Hofstra Lab. & Emp. L. J. 433, 446 (2012).

As a corollary, even where company-wide subjective decision-making or discretion is alleged in the employment discrimination context, Wal-Mart indicates that if another company-wide policy is also alleged, courts must also consider

16

it.  See Wal-Mart, 131 S. Ct. at 2553 (considering evidence of a company-wide "strong corporate culture" that makes Wal-Mart's decision-makers susceptible to gender bias, but finding it unsatisfactory because the adduced expert testimony failed to demonstrate that the corporate culture or "stereotyped thinking" affected employment decisions).  Thus, even in cases where the complaint alleges discretion, if there is also an allegation of a company-wide policy of discrimination, the putative class may still satisfy the commonality requirement for certification.

Second, Wal-Mart is limited to the exercise of discretion by lower-level employees, as opposed to upper-level, top-management personnel.  This qualitative distinction is critical because typically, in exercising discretion, lower-level employees do not set policies for the entire company; whereas, when high-level personnel exercise discretion, resulting decisions affect a much larger group, and depending on their rank in the corporate hierarchy, all the employees in the company.  Consequently, discretionary authority exercised by high-level corporate decision-makers, which is applicable to a broad segment of the corporation's employees, is more likely to satisfy the commonality requirement than the discretion exercised by low-level managers in Wal-Mart.

17

ii.

Courts' rulings on class certification since Wal-Mart bear out the principles announced herein.  See McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 672 F.3d 482, 489 (7th Cir. 2012) cert. denied, 133 S. Ct. 338 (U.S. 2012) (allowing Title VII class certification where the plaintiffs pointed to two company-wide policies); see also, Tabor v. Hilti, Inc., 703 F.3d 1206, 1229 (10th Cir. 2013) (denying class certification where challenged policy was "highly discretional," and the only other alleged company-wide policy was not maintained in a uniform manner); Bolden v. Walsh Constr. Co., 688 F.3d 893, 898 (7th Cir. 2012) (denying class certification in a Title VII case where the only company-wide policy alleged was a policy of giving discretion to lower-level managers and there was a lack of evidence that discretion was exercised in a common way at some common direction).

A comparison of McReynolds and Bolden, both decisions from the Seventh Circuit, highlight the parameters of Wal-Mart.  In McReynolds, the plaintiff contested two national, company-wide policies--a teaming policy and an account distribution policy. 672 F.3d at 488.  The teaming policy allowed brokers to form and distribute commissions with teams; brokers could decide for themselves whether to form teams; and, once the team was formed, brokers decide which other brokers to admit.  Id.    The

18

plaintiffs argued that this national policy had a disparate impact because some successful teams refused to admit blacks. Under the account distribution policy, the customers' accounts of a broker that had left the company were transferred within a branch office; brokers in that office competed for the accounts, and the broker who ultimately won the accounts was determined by company-wide criteria that included the competing brokers' past records of revenue generated, and number of investments and clients retained. Id. at 488-89.

The Seventh Circuit noted that "Complex Directors" and "branch-office managers" "have a measure of discretion with regard to teaming and account distribution [because] they can veto teams or supplement criteria for distributions." Id. at 489. The court explained:

> [T]o the extent that these regional and local managers exercise discretion regarding the compensation of the brokers whom they supervise, the case is indeed like Wal-Mart. But the exercise of discretion is influenced by the two company-wide policies at issue: authorization to brokers, rather than to managers to form and staff teams; and basing account distribution on the past success of the brokers who are competing for transfers.
> . . .
>
> [P]ermitting brokers to form their own teams and prescribing criteria for account distributions that favor the already successful--those who may owe their success to having been invited to join a successful or promising team--are practices of Merrill Lynch, rather than practices that local managers can choose or not at their whim. Therefore challenging those policies

19

in a class action is not forbidden by the Wal-Mart decision.

Id. at 489-90. The court noted that in the absence of the teaming or account distribution policies, if instead the case involved delegation to local management the decision to allow teaming and the criteria for account distribution, McReynolds would be more like Wal-Mart. Id. at 490. Satisfied with the distinction between McReynolds and Wal-Mart, the court reversed the district court's denial of class certification.

In Bolden, the Seventh Circuit reversed the district court's grant of class certification. There, twelve black construction workers alleged that the supervisors practiced or tolerated racial discrimination in assigning overtime work and in working conditions (for example, derogatory graffiti in portable toilets and hangman's nooses in toilets or break sheds). 688 F.3d at 895. The plaintiffs attempted to certify a class covering the employer's 262 project sites in Chicago. Id. The Seventh Circuit noted that "[t]he sites had different superintendents, with different policies . . . and many of the allegedly discriminatory practices depended on the foremen, who made most overtime offers, [and] chastised (or failed to chastise) workers who used racially inflammatory language." Id. at 896. Additionally, the court pointed out the plaintiffs' concessions that "[d]ifferent sites had materially different

20

working conditions[;] . . . most superintendents the[] [plaintiffs] had worked with did not discriminate; [and] their objections concerned only a handful of superintendents and foremen." Id. The court likened the case to Wal-Mart and held that "when multiple [local] managers exercise independent discretion, conditions at different stores (or sites) do not present a common question." Id. It then distinguished the case before it from McReynolds:

> [In McReynolds,] we held that a national class could be certified to contest the polic[ies], which [were] adopted by top management and applied to all of Merrill Lynch's offices throughout the nation. This single national policy was the missing ingredient in Wal-Mart. . . . [Here,] Walsh had no relevant company-wide (or Chicago SMSA-wide) policy other than (a) its rule against discrimination, and (b) its grant of discretion to superintendents assigning work and coping with offensive or bigoted conduct. The first of these policies presents no problem . . . and the second--the policy of on-site operational discretion is the precise policy that Wal-Mart says cannot be addressed in a company-wide class action.

Id. at 898. Thus, the court reversed the grant of class certification.

As evident from our application of the two principles in our discussion below, we believe the allegations in the proposed amended complaint bear a closer resemblance to McReynolds.

### iii.

As a preliminary matter, we note that the class allegations in the original complaint were insufficient to satisfy the

21

commonality standard set forth in Wal-Mart, because the complaint fails to allege that the "subjectivity and stereotyping" regarding compensation paid to female store managers were exercised in a common way with some common direction, and conclusorily alleges that Family Dollar engaged in "centralized control of compensation for store managers at the corporate level of its operations." Aside from this bare allegation, the original complaint does not identify the decision-makers responsible for pay and promotion. Thus, we affirm the district court's dismissal of the original complaint. We view the proposed amended complaint differently.

Applying the above principles, we find that the district court erred in denying leave to amend the complaint because it failed to consider whether: (1) in light of the discretion alleged, the discretion was exercised in a common way under some common direction, or despite the discretion alleged, another company-wide policy of discrimination is also alleged; and (2) the discretionary authority at issue was exercised by high-level managers, as distinct from the low-level type managers in Wal-Mart.

In dismissing the proposed amended complaint, the district court held that Wal-Mart precludes Appellants' class allegations of sex discrimination in pay because it believed that Appellants' claims rest only on a theory that Family Dollar's

22

"use of <u>subjective decision-making</u> created disparities between male and female employees." Additionally, the district court concluded that the company-wide employment policies in the proposed amended complaint were limited to subjective, individualized decision-making--a theory which it stated was "simply foreclosed" by <u>Wal-Mart</u>. The district court's reasoning is based on a misapprehension of both the applicable law and policies alleged by Appellants.

The proposed amended complaint clearly specifies the following company-wide practices: (1) a salary range policy; (2) a pay raise percentage policy; (3) a "built-in headwinds" policy; and (4) dual pay system for hirees and promotees. To expound, the salary range policy sets mandatory minimum and maximum pay for Store Managers. According to Appellants, as a result of this company-wide salary range policy, there are significant disparities in the number of women in the upper pay levels of that range, and exceptions above the range--granted by the corporate Vice Presidents--are often granted more in favor of men. Further, under the pay raise percentage policy, an increase to a store manager's compensation is determined by the manager's prior performance ratings. The Regional Manager and Divisional Vice President grant exceptions above that pay raise percentage, and do so "significantly greater" in favor of men. Additionally, the "built-in headwinds" policy is a method for

23

evaluating and determining compensation based on "prior experience, prior pay, quartile rankings and other specific criteria that have a disparate impact on women's salaries because they incorporate and perpetuate such past discrimination." Essentially, this is a testing or evaluation method that Appellants allege is biased. Finally, the dual pay system for hirees and promotees caps the compensation paid to individuals who are promoted below what lateral hires can make. Statistics proffered by Appellants show more women promoted, and more men hired laterally, influencing the disparity in pay.

We do not now rule on the sufficiency of the allegations of the proposed amended complaint concerning the company-wide policies or on whether certification of the putative class will ultimately be warranted. However, in considering whether amendment of the complaint would be futile, we observe that the proposed amended complaint's allegations of uniform corporate policies and of high-level corporate decision-making are substantively different from those that the Supreme Court held sufficient in <u>Wal-Mart</u>. For instance, the dual pay policy referenced in the proposed amended complaint is a company-wide policy that is in place in all Family Dollar Stores. The amended complaint alleges that women suffer disparate impact as a direct result of this corporate-imposed pay preference for lateral hires. In contrast, if decisions regarding the pay of

24

hirees and promotees were left to the discretion of low-level managers, then the alleged discrimination would be akin to the discrimination alleged in Wal-Mart. See McReynolds, 672 F.3d at 490.

Moreover, the discretionary decisions set forth in the proposed amended complaint are made by high-level corporate decision-makers with authority over a broad segment of Family Dollar's employees, not on an individual store level as in Wal-Mart. Contrary to the dissent's unsupported characterization of the decision-makers in the present case as "middle management," the amended complaint explains that exceptions to centrally determined salary ranges can only be made by "the corporate Vice President at corporate headquarters." Similarly, exceptions to corporate-imposed raise percentages were made by regional managers and senior vice presidents, again at "corporate headquarters." These allegations of high-level decision-making authority exercised by officials at corporate headquarters are thus different in kind from the allegations in Wal-Mart, in which local supervisors were vested with almost absolute discretion over pay and promotion decisions. Wal-Mart, 131 S. Ct. at 2547.

Given these substantial distinctions, Wal-Mart does not preclude as a matter of law a class certification based on the amplified allegations of the proposed amended complaint. In

25

light of our policy favoring liberal amendment of complaints, we hold that the district court erred in concluding that amendment would be futile and in denying leave to amend the complaint. The district court therefore should revisit the certification question when the record underlying the allegations in the amended complaint has been more fully developed.

B.

The district court next denied leave to amend on grounds that amendment would be prejudicial to Family Dollar. In support of its prejudice conclusion, the district court stated that the original complaint was filed over three years prior, and Appellants did not seek to amend until briefing on Family Dollar's motion for summary judgment was almost complete. Further, the court stated that the proposed complaint alleges a "new theory" in an attempt to avoid Wal-Mart. For the reasons stated below, we find that the district court's determinations as to prejudice are clearly erroneous.

First, as to the delayed filing of the proposed complaint, review of the record indicates that the cited delay, for the most part, is attributable to Family Dollar. On numerous occasions, Family Dollar moved to dismiss the complaint and this had the effect of staying discovery, thereby prolonging the litigation. Appellants ought not to be penalized for this delay. Further, the typical briefing schedule for motions to

26

dismiss or summary judgment involves the initial filing of a dismissal motion by the defendant, then the plaintiff files an opposition to the motion and if necessary, a motion to amend the complaint, and then the defendant files a reply brief. That Appellants filed the motion for leave to amend simultaneously with their opposition to Family Dollar's motion for summary judgment does not appear out of turn and cannot be grounds for finding prejudice to Family Dollar.

With respect to the alleged "new theory," review of the two complaints indicates that Appellants do not allege an entirely new theory in the amended complaint, but rather elaborate on one of two allegations that were previously pled in a conclusory fashion. In their original complaint, Appellants alleged both "subjectivity and gender stereotyping," as well as "centralized control of compensation for store managers at the corporate level of [Family Dollar's] operations." They originally failed to support either theory with substantial factual allegations, including the nature of the claimed "centralized control," though the district court initially held that the original complaint survived Rule 12(b)(6). Following Wal-Mart, it became clear that Appellants needed to allege more control over pay determinations by upper-level decision-makers to meet the commonality requirement. The Appellants filed a proposed amended complaint accordingly and included numerous additional

27

facts supporting their previous assertion of centralized corporate control.

Family Dollar makes much of the fact that Appellants previously stated their claims were virtually identical to those dismissed in Wal-Mart, seemingly alleging an estoppel argument. Even assuming that Appellants seek to pursue a completely new legal theory from the one asserted previously, such an approach is not cause for "judicial estoppel." See Lowery v. Stovall, 92 F.3d 219, 224 (4th Cir. 1996) (For judicial estoppel to apply, "the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation. And the position sought to be estopped must be one of fact rather than law or legal theory." (emphasis added) (citation omitted)). Appellants' present factual position in the proposed amended complaint is consistent with the original complaint. As Appellants contend, the proposed amended complaint merely elaborates on the allegation in the original complaint that Family Dollar engages in "centralized control of compensation for store managers at the corporate level." The legal theory remains the same, thus, judicial estoppel is not cognizable in this action.

Further, we have held that "the filing of a supplemental pleading is an appropriate mechanism for curing numerous possible defects in a complaint." Franks v. Ross, 313 F.3d 184,

28

198 (4th Cir. 2002) (also noting that "[u]nder Rule 15(d), a party may supplement its complaint 'even though the original pleading is defective in its statement of a claim for relief or defense.'"). Hence, as Family Dollar believed that the original complaint was defective in light of <u>Wal-Mart</u>, Appellants should have been granted leave to amend to cure the defect, more especially because this was the first time they sought to amend their complaint.

Besides, although prejudice can result where a new legal theory is alleged if it would entail additional discovery and evidentiary burdens on the part of the opposing party, this "basis for a finding of prejudice essentially applies where the amendment is offered shortly before or during trial." <u>Johnson v. Oroweat Foods Co.</u>, 785 F.2d 503, 510 (4th Cir. 1986). Because the parties were still in discovery, and many steps removed from trial, the purported undue prejudice to Family Dollar is overstated. We emphasize that our holding does not condone an automatic three-year period for plaintiffs to seek leave to amend a complaint. Rather, we conclude that Family Dollar would not be unduly prejudiced by the amendment under all the particular circumstances presented in this case.

IV.

The district court abused its discretion in denying Appellants' request for leave to amend their complaint by primarily basing the denial on its erroneous interpretation of Wal-Mart. We reverse the district court's decision in part and remand for the court to consider, consistent with this opinion, whether the proposed amended complaint satisfies the class certification requirements of Rule 23.

AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED

30

BARBARA MILANO KEENAN, Circuit Judge, concurring:

I join Judge Gregory's fine majority opinion in full. I write briefly to emphasize that despite the dissent's dystopian view, the majority has rendered a straightforward and limited decision: that the plaintiffs should be permitted to amend their original complaint after a dramatic shift in the law regarding class action certification.

Meaningful access to the courts requires that plaintiffs have a fair opportunity to plead their case in accordance with the prevailing legal standard. The plaintiffs here should not be penalized for failing to amend their complaint in anticipation of Wal-Mart, but should be permitted this first attempt to amend following that decision. Additionally, the plaintiffs obtained new information about the corporate structure of Family Dollar during mediation occurring after the original complaint was filed, which facts they reasonably chose to include in the proposed amended complaint. Despite the dissent's apparent assumption that the class will be certified by the district court, if the allegations included in the amended complaint ultimately are not substantiated, the class simply will not be certified, and the plaintiffs' case will fail.

The dissent nevertheless sweeps broadly and bleakly, convinced that the class action mechanism is being used to

31

"punish" the business community "for nothing more than being companies." Dissent at 35. However, the majority opinion simply allows a putative class to re-plead its class allegations, in accordance with Federal Rules of Civil Procedure 15 and 23. Under the majority's holding, the ability of litigants to seek access to our courts will be restricted solely by the strength of their case.

32

WILKINSON, Circuit Judge, dissenting:

I cannot join the majority's decision, because it fails to respect the two other levels of the federal judiciary, namely the Supreme Court and the district courts. First as to the Supreme Court. The decision is Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011), and the majority opinion has drained it of meaning. The defendant here, as in Wal-Mart, relies on what plaintiffs admit are multitudinous, discretionary decisions by middle and lower management, which would seem to render class action treatment under Wal-Mart impermissible and ineffectual. Notwithstanding this, the majority has unloaded on the district court the prospect of a massive, nationwide class action whose administrability would in all likelihood prove impossible.

In the majority's view, Wal-Mart applies only where decisions are left to the complete discretion of low-level managers, maj. op. at 25, and are implemented on an "individual store level." Id. The fact that a company delegates extensive discretion to 95 vice presidents and 400 district managers, Appellee's Br. at 3 (citing Grace v. Family Dollar Stores, Inc. (In re Family Dollar FLSA Litig.), 637 F.3d 508, 510 (4th Cir. 2011)), does not, in the majority's view, bring this case within the ambit of Wal-Mart and still permits nationwide class action treatment. The majority assumes that nearly 500 middle managers somehow all exercise their discretion in lockstep. That cannot

33

be.    The fact that some middle managers would promote from within, and others recruit from without, as they are given the discretion to do, does not, in the majority's view, preclude nationwide class action treatment.    The fact that many managers would elevate women from either inside or outside the company, as they are perfectly free to do, would hardly seem discriminatory, but it would be contrary to the commonality <u>Wal-Mart</u> requires for a nationwide class action to proceed.

The majority responds to this point by citing the fact that exceptions to corporate salary ranges may be granted by a corporate vice president.    Maj. op. at 25.    But this fact only confirms the assertion that placements <u>within</u> the ranges are determined by middle managers.    The fact that exceptions to corporate limits on raises are made by regional managers and senior vice presidents is similarly unavailing to the majority's position -- regional managers, by definition, do not make decisions on a national level.    In the majority's view, middle managers at Family Dollar are purely robotic with respect to those they supervise, but no American company operates in such a way.

The majority plainly believes <u>Wal-Mart</u> does not apply to middle managers exercising delegated discretion under guidelines such as these because if it believed <u>Wal-Mart</u> applied, the district court's denial of nationwide class certification would

34

be promptly affirmed. The majority's insistence that <u>Wal-Mart</u>
does not apply to middle management (but only to lower-level
store managers) suggests not so subtly that it wants this class
to be certified. But the commonality <u>Wal-Mart</u> insists is
necessary for class action certification is plainly absent here,
though the majority purports to find it in some centralized
policy. The fact that a company sets pay ranges or values prior
experience or performance as factors in compensation is not
sinister. Vast numbers of companies do just that. A policy
with an obvious business justification may occasionally produce
some statistical disparity nationwide. But <u>Wal-Mart</u> makes clear
that the fact that a policy may have some statistical disparity
nationwide does nothing to dispel the fact that in many
districts, the policy will <u>not</u> have a statistical imbalance, but
indeed may work to the <u>decided advantage</u> of the putative class.
131 S. Ct. at 2555.

The policies cited by plaintiffs are not "built-in
headwinds," maj. op. at 23 (internal quotation marks omitted),
but rather common management techniques that make common sense.
If centralized delegations of discretion such as these are
enough for a nationwide class action to get rolling, then few
companies will be exempt. The law is punishing companies for
nothing more than being companies, which is apparently the new
status offense.

35

In reaching its decision, the majority faults the district court for denying plaintiffs leave to amend their complaint. But if this is an abuse of discretion, and these findings are clearly erroneous, then class action litigation will almost never end. Not content with finding the district court "abused its discretion," maj. op. at 30, the majority holds its factual findings "clearly erroneous" as well. Id. at 26. The district judge should be commended, not condemned. The amended complaint severely prejudiced the defendants by forcing them to defend a wholly different suit three years after the original complaint was filed. The amended complaint contradicted assertions in the original complaint to such an extent as to do violence to the values of forthrightness and fair dealing that the district court had every right to expect from the litigants before it. It was also every bit as irreconcilable with the Supreme Court's decision in Wal-Mart as the original, making denial of leave fully justifiable on futility grounds.

In sum, the district court has been brought up short and found to have abused its discretion for doing nothing more than faithfully following a Supreme Court decision and for attempting to ensure a small measure of candor and consistency in the filings of that court. It is our obligation to respect the Supreme Court's preeminent place in a hierarchical judicial system, as well as the trial court's discretion and experience

36

in matters explicitly entrusted by both logic and precedent to its competence. This decision does neither.

I.

Federal Rule of Civil Procedure 15(a)(2), which governs pretrial requests for leave to amend, advises that "[t]he court should freely give leave when justice so requires." The Supreme Court has accordingly required some "justifying reason" in support of the rejection of a party's request to amend. <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).

Nevertheless, the Supreme Court has repeatedly recognized that "the grant or denial of an opportunity to amend is within the discretion of the District Court." <u>Id.</u>; <u>see also</u> <u>Krupski v. Costa Crociere S. p. A.</u>, 130 S. Ct. 2485, 2496 (2010). Denying leave to amend is appropriate when at least one of three circumstances exists: (1) "the amendment would be prejudicial to the opposing party;" (2) "there has been bad faith on the part of the moving party;" or (3) "the amendment would have been futile." <u>Laber v. Harvey</u>, 438 F.3d 404, 426-27 (4th Cir. 2006) (internal quotation marks omitted). For the reasons that follow, it is abundantly clear that the district court was justified in denying plaintiffs' motion for leave on <u>all three</u> grounds -- prejudice, bad faith, and futility.

37

II.

A.

As to the first ground, "[w]hether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." Laber v. Harvey, 438 F.3d 404, 427 (4th Cir. 2006). With respect to the amendment's nature, "[a] common example of a prejudicial amendment is one that 'raises a new legal theory that would require the gathering and analysis of facts not already considered by the defendant.'" Id. (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986)) (alterations omitted). By contrast, "[a]n amendment is not prejudicial . . . if it merely adds an additional theory of recovery to the facts already pled." Id.

The majority acts as a cheerleader for the amended complaint, glossing over its gross incompatibility with the original and casually dismissing the threat of prejudice as "overstated." Maj. op. at 29. A comparative analysis of the two complaints makes recognition of the night-and-day differences between them unavoidable. The majority's statement that appellants do not allege a new theory, id. at 27, finds support neither in the record nor in the law. The text of the two complaints speaks -- nay, screams -- this conclusion for itself.

38

1.

At its core, the original complaint attacks Family Dollar for maintaining a supposedly subjective and decentralized decision-making structure for determining store manager compensation, which plaintiffs alleged produced illegal discrepancies between male and female pay. A crucial paragraph, in particular, levels the following accusation with great force:

> Defendant's pay decisions and/or system includes subjectivity and gender stereotyping that causes disparate impact to compensation paid to female store managers. Plaintiffs are aware, at this time, of no other criteria which causes such disparate impact other than gender bias, subjectivity and stereotyping. Plaintiffs are unaware, at this time, of any other specific criteria that are capable of separation and analyses.

Compl. ¶ 22 (emphases added).

The import of that paragraph is crystal clear: according to plaintiffs themselves, any actionable discrimination derived solely from "subjectivity and gender stereotyping" -- nothing less, nothing more.[1] Where subjectivity and gender stereotyping translate directly into discriminatory employment outcomes for a nationwide group of employees (as alleged here), the contested decisions must necessarily have occurred outside the

---

[1] As discussed in Part III, plaintiffs also repeatedly represented to the district court the extreme similarity of their claims to those brought in Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011), which were founded on allegedly discriminatory exercises of discretion.

39

corporation's core. Any centralized employment policy -- even if rooted in the prejudicial predilections of a particular officer or group of officers -- could result in generally unfavorable consequences for plaintiffs only if implemented through objective standards, such that the lower-level decision-makers who determine individual store managers' salaries have little personal power to deviate from the commands dictated by corporate headquarters. But plaintiffs' complaint was that lower-level managers had too much discretion to deviate, not too little.

Nor does the original complaint specify any other aspect of Family Dollar's compensation policies as a source of plaintiffs' injury. In light of prior litigation involving Family Dollar, it should come as no surprise that the original complaint is rooted exclusively in allegations of permissive "subjectivity and gender stereotyping." In a previous suit brought by plaintiffs' counsel against Family Dollar, for instance, plaintiffs (some of whom are also parties to the instant action, Appellee's Br. at 4) alleged that "[d]espite [gender-based disparities in pay, Family Dollar] continues to allow its District Managers to subjectively decide what a Store Manager should earn." Opponent's Responsive Submission in Resp. to Ex. B of the Ct.'s Order at 12, Collins v. Family Dollar Stores,

<u>Inc.</u>, No. 7:04-cv-00553-VEH (N.D. Ala. Nov. 17, 2006), ECF No. 235.

Plaintiffs seek to avoid the thrust of their original complaint by clinging to a single sentence repeated (with immaterial variations) several times in their original complaint -- that "[d]efendant engages in centralized control of compensation for store managers at the corporate level of its operations." Compl. ¶¶ 18, 37, 46, 53. This uninformative bit of boilerplate seeks to subject corporations to nationwide class actions by virtue of their mere existence. Plaintiffs' reasoning in this respect would penalize a company for little more than operating on a national scale under the same corporate name. Even if taken as true, the fact that some centralized directive comes from some corporate headquarters is entirely unremarkable. Surely corporations of national scope cannot flourish in the modern economy without <u>some</u> "centralized control of compensation" for their many thousands of employees. At the very least, corporate headquarters must allocate resources and articulate certain general policies to guide regional or other mid-level managers in setting individual salaries and wages.

The alternative would operate to inhibit the most basic tools of management and result in budgetary chaos. The question, therefore, is <u>how much</u> "centralized control of compensation" the original complaint actually alleges with

41

respect to the challenged employment decisions.  The answer is, clearly, not much.  If this bare, conclusory statement in the complaint is given weight, then nationwide class action suits are off and running, notwithstanding Wal-Mart and the pleading standards laid down in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

2.

The amended complaint, in stark contrast to the original, pivots 180 degrees to assert that Family Dollar's compensation scheme actually operates in an objective and centralized manner. The amended complaint is not, as the majority contends, a "mere[] elaborat[ion]" on the original.  Maj. op. at 28.  It is what the district court says it is: a bald attempt to assert a completely new theory.  It backtracks on the earlier assertion that the flaw in Family Dollar's compensation scheme was too much decentralized, subjective decision-making, by alleging that the system "requires pay to be set by uniform, company-wide criteria."  Am. Compl. ¶ 29.  The complaint now decides to challenge the purported lack of subjectivity inherent in the company's supposedly centralized compensation scheme -- the very subjectivity that plaintiffs had earlier insisted was the hallmark of Family Dollar's corporate structure.

42

As for plaintiffs' allegations concerning the implementation of Family Dollar's compensation criteria, the following passage is typical:

> Store Managers' compensation is not set by managers who have unfettered discretion to use their own judgment without regard to any corporate-imposed criteria or standards. All Store Managers' salaries . . . are subject to the same corporate-administered pay system and policy established by corporate headquarters; all Store Manager's salaries are subject to store payroll budgets established at corporate headquarters; and all Store Managers have the same job description which sets forth a common set of duties and responsibilities regardless of location. There is no policy against having uniform employment practices at Family Dollar.

Id. ¶ 32. We are now explicitly told, moreover, in a complete about-face from the original complaint, that "Family Dollar is not operated in a decentralized, subjective manner. Nor is the pay-setting process for Store Managers based on decentralized, subjective decisionmaking." Id. ¶ 34. The demons in the original complaint were those runaway lower-level managers. The demon in the amended complaint is a controlling "corporate headquarters." Id. ¶ 35.

3.

Given all of the foregoing, it should be plain that the amended complaint is not some mere modification of the original, as the majority contends. Instead, it is manifestly, substantively different from the original. The two are utterly irreconcilable. They describe two different companies. By

43

transforming their claims from a frontal assault on an excessively subjective and decentralized compensation system into an intricate attack on a purportedly objective and centralized scheme, plaintiffs have done far more than "raise[] a new legal theory." Laber, 438 F.3d at 427 (internal quotation marks omitted).

The majority breezily dismisses these concerns, asserting in conclusory terms that "[t]he legal theory remains the same." Maj. op. at 28. My colleagues would be wise to pay some modest heed to the opinion of the district judge, who was better situated to evaluate the actual implications of the transfigured complaint. The new complaint, by virtue of its novel allegations, would require significant "gathering and analysis of facts not already considered by the defendant." Laber, 438 F.3d at 427 (internal quotation marks and alterations omitted). As the district judge emphasized: "Plaintiffs wish to pursue extensive discovery to support and clarify their new theories, which will require the parties to re-open and conduct new expert discovery based on plaintiffs' changed version of the facts." J.A. 418.

Thus, the district court was correct to conclude that granting leave to amend would be prejudicial to Family Dollar. Id. at 417-18. "The proof required to defend against this new claim would be of an entirely different character than the proof

44

which the defendant [was] led to believe would be necessary. Belated claims which change the character of litigation are not favored." Deasy v. Hill, 833 F.2d 38, 42 (4th Cir. 1987). The district court acted well within its discretion by denying plaintiffs' motion for leave to amend.

                                    B.

    The timing of a proposed pleading amendment also bears on whether the change would prejudice the opposing party. Laber, 438 F.3d at 427. In particular, whereas an amendment "offered before any discovery has occurred" is unlikely to be prejudicial, "the further [a] case [has] progressed . . . , the more likely it is that the amendment will prejudice the defendant." Id.; see also United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451, 461 (4th Cir. 2013) (affirming denial of motion for leave to amend in light, inter alia, of a two-year gap between filing of complaint and dismissal); Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 379 (4th Cir. 2012) (affirming denial of motion for leave to amend where "a significant amount of discovery had already been conducted").

    Here, plaintiffs' attempt to amend their complaint came three years after the case was initially filed -- and only when Family Dollar appeared poised to succeed on its motion to dismiss and/or strike the original complaint's class

                                    45

allegations.    Moreover,    the    district    judge    observed    that
plaintiffs had been given "adequate time to conduct discovery,"
that they had in fact "conducted significant discovery," and
that plaintiffs' own counsel had even admitted "that discovery
is mostly completed."    J.A. 414-15.    Hence, the district court
concluded    that    any    "additional    discovery    would    be . . .
prejudicial to defendant."    Id. at 415.    The court proceeded to
hold that:

> [A]llowing plaintiffs to amend the complaint would
> prejudice defendant.    Since    the    filing    of    the
> complaint three years ago, the parties have pursued
> discovery . . . and have attempted to mediate claims
> under the original complaint.    Here, plaintiffs chose
> not to file their proposed amended complaint until the
> briefing on defendant's motion to dismiss was nearly
> complete . . . .    Plaintiffs wish to pursue extensive
> discovery to support and clarify their new theories,
> which will require the parties to re-open and conduct
> new    expert    discovery    based    on    plaintiffs'    changed
> version of the facts.

Id. at 417-18.

Plaintiffs attempt to blame the three-year delay in filing
for leave to amend on the various motions and objections that
were    exchanged    between    the    parties    during    the    course    of
discovery.    Such tit for tat, however, is not peculiar to this
litigation; every complex class action of this variety will have
just this sort of pretrial motion exchange.    The majority's
adoption of plaintiffs' reasoning in this respect, maj. op. at
26, thus comes close to establishing a per se three-year grace

46

period for motions for leave to amend. Such a protracted interval is excessive and susceptible to manipulative conduct. The new rule established by today's opinion endorses filing delays that patently prejudice opposing parties.

Moreover, the delay in this particular case is especially unjustifiable. Plaintiffs' counsel have extensive experience with defendant's corporate structure: by their own admission, they have sued Family Dollar over labor and employment matters "approximately 15" times since 2001. See Pls.' Reply to Def.'s Resp. to Pls.' Opp'n to Terry Price Serving as Local Counsel and Req. for Emergency Hr'g at 3 n.2, Scott v. Family Dollar Stores, Inc., No. 3:08-cv-00540-MOC-DSC (W.D. N.C. Nov. 4, 2008), ECF No. 15. As the district court noted, plaintiffs were plenty familiar through their multiple prior lawsuits with defendant's corporate organization. J.A. 417. Although plaintiffs assert in a conclusory footnote that defendant's compensation policies have changed since the time of these many prior suits, Appellants' Br. at 53 n.7, they provide no substantiation for this claim nor do they identify any specific ways in which the policies have been altered.

The majority inexplicably focuses on the fact that plaintiffs' motion for leave to amend was made prior to trial. Maj. op. at 29. The crux of this dispute, however, is class certification. That issue is routinely decided pretrial. See

47

Fed. R. Civ. P. 23(c)(1)(A) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."). Any potential source of prejudice, therefore, lies not in inconveniences at trial but rather in the superfluous or additional discovery costs imposed on defendant as a result of plaintiffs' fluctuating class action theories. If the majority's misplaced emphasis on trial represents a new standard for identifying prejudice in class certification proceedings, prejudice will almost never be found.

I see no reason whatsoever to usurp the district court's essential case management functions or to question the accuracy of its characterizations. It was entirely proper for the district court to conclude that permitting plaintiffs to amend their complaint so substantially and at such a late stage of the game would impermissibly prejudice Family Dollar. It was altogether sound for the trial court to hold that Family Dollar should not be forced to defend a new suit three years after the original complaint was filed. See Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 439-41 (4th Cir. 2011) (affirming on prejudice grounds denial of motion for leave where amendment was filed at the "eleventh hour," "would probably have necessitated additional discovery," and would have "substantially change[d] the nature and scope" of litigation)

48

(internal quotation marks omitted); Equal Rights Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 603-04 (4th Cir. 2010) (same).


III.

As to why plaintiffs wanted to undertake such an extensive overhaul of their complaint in the first place, the majority opinion points to the Supreme Court's decision in Wal-Mart, 131 S. Ct. 2541. The majority, however, misapprehends the import of Wal-Mart with respect to the final two grounds on which a district court may deny a motion for leave to amend a pleading -- the lack of good faith, to which I now turn, and futility, discussed in Part IV. See Laber v. Harvey, 438 F.3d 404, 426-27 (4th Cir. 2006).

A district court's refusal to permit a pleading amendment on bad faith grounds is justified where "the plaintiff's first theory of recovery is based on his own reading of . . . cases and it turns out that he misinterpreted how that theory would apply to the facts of his case." Id. at 428 (emphasis omitted). That situation is precisely what occurred here. Plaintiffs misinterpreted how certain class action precedents would apply to their case and then sought to construct an entirely new set of facts to overcome their error. Their willingness to adopt contradictory factual positions in order to match their evolving legal theories evidences a degree of bad faith sufficient to

49

warrant denial of leave to amend. To the old-fashioned view that prior representations to a court actually count for something, the majority answers: Not much.

Plaintiffs were wholly content to ride the coattails of the proposed class in Wal-Mart while that class was enjoying success in the lower federal courts. In consenting to a transfer of venue in 2008, plaintiffs explicitly stated that, with respect to a then-recent round of the Wal-Mart litigation, "[t]he Ninth Circuit . . . affirmed certification of . . . a nationwide class having virtually identical claims of sex discrimination in pay to those brought in this case." J.A. 221 (citing Dukes v. Wal-Mart, Inc., 509 F.3d 1168 (9th Cir. 2007)) (emphasis added). Later in the litigation, plaintiffs argued that "[t]he evidence is expected to show that this case is more like . . . the Ninth Circuit's decision in" Wal-Mart than the cases cited by defendant. S.A. 527.

Then plaintiffs adopted a dramatically different stance after the Supreme Court reversed the Ninth Circuit's certification decision in 2011. See 131 S. Ct. 2541. In their briefing before this court, for instance, plaintiffs contend that "Family Dollar's salary system is the opposite of that in Wal-Mart," Appellants' Br. at 5; that "[t]he current case has never alleged any store-level decisionmaking similar to that in Wal-Mart," id. at 16, 21-22 (emphasis omitted); that "[t]he Wal-

50

<u>Mart</u> decision was limited to localized decisionmaking within each store that was not subject to any centralized policies or control similar to those alleged here," <u>id.</u> at 20-21; and that "<u>Wal-Mart</u> simply does not apply to [the] Complaint [here]," <u>id.</u> at 52 (emphasis omitted).

Statements made at oral argument help to illustrate the gross incompatibility between the factual allegations made by plaintiffs' original and amended complaints. The court inquired: "Don't we have a big difference . . . between your complaint and your amended complaint . . . in terms of the substantive allegations?" Plaintiffs' counsel responded: "No, I do not believe so." He later elaborated:

> We say that this case involves centralized criteria . . . and that we can show that that centralized criteria is what's causing the disparity, not . . . anything localized. . . . That's our complaint <u>from Day 1</u>. If you read our original complaint, it says that we are attacking a centralized system. It says <u>nothing but that</u>.

(emphasis added). Despite these protestations to the contrary, the original complaint actually says precisely the opposite. It states explicitly that "Plaintiffs are aware, at this time, of <u>no other criteria</u> which causes such disparate impact other than gender bias, <u>subjectivity</u> and stereotyping." Compl. ¶ 22 (emphasis added).

To be sure, counsel must enjoy latitude in amending complaints to address intervening developments in the law and to

51

incorporate factual material uncovered since the original filing. Some evolution of a plaintiff's approach to a case is to be expected, for good advocacy is adaptive in some measure. It is a matter of degree, however, and the district court was right to spot in plaintiffs' new attack a bridge too far.

For the instant plaintiffs do not merely present a new legal argument predicated on their original factual allegations, or some modification based upon new revelations. Instead, they seek to invent an entirely new set of facts tailored to their revised theory of recovery. The corporate defendant described in the amended complaint bears no more than a nominal relationship to that described in the original. The proposed amendment is "not merely clerical or corrective. It [establishes] an entirely new factual basis for the plaintiffs' claims." Little v. Liquid Air Corp., 952 F.2d 841, 846 (5th Cir. 1992), reinstated in relevant part, 37 F.3d 1069, 1073 & n.8 (5th Cir. 1994) (en banc); see also Cornell & Co., Inc. v. OSHRC, 573 F.2d 820, 824-25 (3rd Cir. 1978) (denying leave to amend where plaintiff "changed the factual basis for the charge as well as his legal theory") (internal quotation marks omitted).

This is more than some commonplace doctrinal point. Complaints must bear some relationship to the external reality which they purport to describe. When a corporation is

52

reinvented from one employing decentralized, subjective decision-making to one with rigid, entirely centralized policies, law's relationship to reality is stretched too thin. See <u>Bradley v. Chiron Corp.</u>, 136 F.3d 1317, 1324-26 (Fed. Cir. 1998) (disregarding "sham" facts in an amended complaint that contradicted the factual allegations pled in the original and represented "a transparent attempt to conform the facts to the requirements of the cause of action"). Law is not a mere set of expressions to be manipulated toward a given end. It is a system designed to ascertain truth as far as possible in order to produce justice, to the extent possible. To do this, law must maintain some concrete relationship with facts as they exist. Plaintiffs' contradictory pleadings, which treat reality as a plastic entity to be molded to their purposes, run directly counter to this principle. See <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296-97 (9th Cir. 1990) ("Although leave to amend should be liberally granted, the amended complaint may only allege other facts consistent with the challenged pleading.") (internal quotation marks omitted).

Were plaintiffs permitted to substitute contradictory factual narratives every time an intervening opinion cast doubt upon their claims, they could hold defendants hostage by indefinitely postponing final judgment. The majority finds the original complaint deficient because it alleged only a

subjective decision-making structure.    Maj op. at 21-22.    But
when plaintiffs sought to run from their prior representations
and assert a highly controlled decision-making apparatus, the
majority says no problem.    I regret that the majority encourages
litigants to approach courts in such a manner.


                                IV.

     Finally, the district court's rejection of plaintiffs'
motion for leave to amend was warranted on a third ground:
futility.    See Laber v. Harvey, 438 F.3d 404, 426-27 (4th Cir.
2006).    "Futility is apparent if the proposed amended complaint
fails to state a claim under the applicable rules and
accompanying standards" -- that is, if it "fails to satisfy the
requirements of the federal rules."    Katyle v. Penn Nat'l
Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011) (internal
quotation marks omitted).    Wal-Mart itself expounded "the
requirements of the federal rules" -- specifically, Federal Rule
of Civil Procedure 23's commands concerning the certification of
class actions.    It is plain that the amended complaint fails to
state a claim by virtue of that decision.

                                A.

     As in Wal-Mart, "[t]he crux of this case is commonality --
the rule requiring a plaintiff to show that 'there are questions
of law or fact common to the class.'"    131 S. Ct. at 2550-51

                                54

(quoting Fed. R. Civ. P. 23(a)(2)).  <u>Wal-Mart</u>'s central teaching is that the claims of each class member "must depend upon a common contention."  <u>Id.</u> at 2551.  That common contention, in turn, must "be of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  <u>Id.</u>  Thus, "[w]hat matters to class certification . . . is not the raising of common 'questions' -- even in droves -- but, rather the capacity of a classwide proceeding to generate common <u>answers</u> apt to drive the resolution of the litigation."  <u>Id.</u> (internal quotation marks omitted).

Applying these principles to employment discrimination claims, the <u>Wal-Mart</u> Court made clear that "[w]ithout some glue holding the alleged <u>reasons</u> for [each of the challenged] decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question <u>why was I disfavored</u>."  <u>Id.</u> at 2552.  As relevant here, plaintiffs must show "'[s]ignificant proof that an employer operated under a general policy of discrimination'" in order to demonstrate the existence of the requisite "glue."  <u>Id.</u> at 2553 (quoting <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 159 n.15 (1982)) (alteration in original).  For two reasons, plaintiffs have

55

failed to satisfy this standard.   First, the claims in the
amended complaint fail on their face.   Second, even if the
claims were not facially deficient, the proffered evidence would
still be incapable of supporting such claims on a classwide
basis.

1.

In light of the stunning similarities between this case and
Wal-Mart, the allegations in the amended complaint -- just as in
the original complaint -- are legally insufficient from the
outset.   In both cases, defendants are large corporations
operating nationwide chains of consumer-goods stores.   From Wal-
Mart:

> Petitioner Wal-Mart is the Nation's largest
> private employer.  It operates four types of retail
> stores throughout the country . . . .  Those stores are
> divided into seven nationwide divisions, which in turn
> comprise 41 regions of 80 to 85 stores apiece.  Each
> store has between 40 and 53 separate departments and
> 80 to 500 staff positions.  In all, Wal-Mart operates
> approximately 3,400 stores and employs more than one
> million people.

131 S. Ct. at 2547.  And from the briefing here: "Family Dollar
operates a chain of over 7,000 stores in more than 40 states"
and "'has divided its operations into 95 regions, each run by a
vice president, and then into districts, each run by a district
manager.'"  Appellee's Br. at 3 (quoting Grace v. Family Dollar
Stores, Inc. (In re Family Dollar FLSA Litig.), 637 F.3d 508,
510 (4th Cir. 2011)).   There are approximately four hundred

56

districts, each of which includes between ten and thirty stores.
Id.

In both cases, the proposed class encompassed many thousands of retail-level, female employees and former employees. In both cases, plaintiffs challenged various pay and promotion decision procedures as improperly gender-related. Compare Wal-Mart, 131 S. Ct. at 2547 ("The named plaintiffs in this lawsuit, representing the 1.5 million members of the certified class, are three current or former Wal-Mart employees who allege that the company discriminated against them on the basis of their sex by denying them equal pay or promotions, in violation of Title VII of the Civil Rights Act of 1964 . . . ."), with Am. Compl. ¶ 5 ("The plaintiffs bring this action on behalf of themselves and all female Store Managers pursuant to Title VII of the 1964 Civil Rights Act . . . and § 216(b) of the Equal Pay Act of 1963 . . . to redress the defendant's widespread and pervasive gender discrimination in employment opportunities.").

And most significantly, in both cases, all of the contested employment actions derived from the same type of decision-making structure. In Wal-Mart, the Supreme Court stated that mid-level managers were allowed to exercise "discretion" within "limits" imposed and enforced by "corporate oversight," with such oversight including "preestablished ranges" and "certain

57

objective criteria" for pay and promotions. 131 S. Ct. at 2547. The district court in Wal-Mart provided even greater detail, explaining that "the company maintains centralized corporate policies that provide some constraint on the degree of managerial discretion over in-store personnel decisions." Dukes v. Wal-Mart Stores, Inc., 222 F.R.D. 137, 152-53 (N.D. Cal. 2004). For instance, "there is a basic compensation structure that applies similarly to all in-store salaried management positions across all types of Wal-Mart stores, in that the computation begins with a base salary within a range set by the corporation . . . , with adjustments allowed for profit incentives and/or merit increases." Id. at 148.

As discussed in Part II, the factual and legal allegations contained in the amended complaint in this case were so novel as to warrant a finding of prejudice. The fact that certain allegations are new, however, does not indicate that they are viable. Here, despite plaintiffs' efforts to allege extensive centralized control, the amended complaint reveals the existence of a corporate decision-making structure parallel to that described in Wal-Mart. As the district court here explained, "Although plaintiffs [now] purport to deny that class members' pay is set through a discretionary, subjective process, . . . the discretionary pay of managers, within uniformly established parameters, remain[s] the only source of discrimination

58

alleged." J.A. 417. That pattern of dispersed managerial discretion within centralized parameters is precisely that of Wal-Mart.

While plaintiffs fail to so much as identify the source of many of the supposed nefarious corporate parameters, see, e.g., Am. Compl. ¶ 51, even if we were to accept these dubious assertions at face value, plaintiffs' proffered amendment would still be futile. In an effort to identify a "specific employment practice" responsible for the alleged pay discrepancies, Wal-Mart, 131 S. Ct. at 2555 (internal quotation marks omitted), plaintiffs (and the majority) point to four corporate policies. With respect to each claim, plaintiffs' own brief gives away the ballgame. First, plaintiffs challenge the corporate-imposed salary ranges for store managers. Appellants' Br. at 13-14; Am. Compl. ¶ 35. A salary range, however, intrinsically imparts discretion to those charged with administering it. As the district judge noted, "a large number of decision-makers, . . . located around the country, exercise individual discretion in placing Store Managers within the established pay ranges." J.A. 419. Discretion cabined by broad corporate policies -- including salary ranges -- is precisely the structure that Wal-Mart found not to be susceptible to class action treatment. 131 S. Ct. at 2547 (denying class certification despite defendant's use of salary ranges). If the

59

existence of such discretion defeated class action commonality in <u>Wal-Mart</u>, it must do so here.

Second, plaintiffs decry the alleged corporate-imposed cap on pay raises and contend that exceptions to this cap, which may only be granted by Regional Managers and Divisional Vice Presidents, are granted disproportionately to males. Appellants' Br. at 13; Am. Compl. ¶ 36. Regional Managers and Divisional Vice Presidents, however, as their respective titles indicate, are middle managers. <u>See</u> J.A. 419. By definition, they are incapable of dictating corporate-wide policies. As the district judge noted, plaintiffs' allegations in this respect again converge with the facts in <u>Wal-Mart</u>: both cases involve dispersed decision-makers exercising discretion (e.g., granting exceptions) free of direct corporate control and oversight. <u>Id.</u> at 417, 419.

Third, plaintiffs argue that defendant's criteria for determining compensation -- criteria which include prior experience and performance evaluations -- disparately impact women. Appellants' Br. at 32; Am. Compl. ¶¶ 40, 51. The use of such criteria is hardly remarkable; the only thing that would be remarkable is if Family Dollar failed to find prior experience and prior performance relevant. The business justification for this practice is obvious.

60

Plaintiffs do not allege, moreover, that these criteria constitute a rigid formula; instead, the criteria appear to be simple guideposts listing multiple factors designed to channel the discretionary decisions of those middle managers charged with setting store manager salaries. It is the business equivalent of a judicial totality-of-the-circumstances test, with the weight and relevance of the factor or circumstance to be determined individually. Indeed, it would be senseless to set rigid salaries for every store manager at corporate headquarters, both because it would strip the system of incentives and because the performance of each manager simply is not identical. As noted above, this type of broad corporate constraint on what is fundamentally a discretionary determination does not satisfy the commonality requirement. Wal-Mart, 131 S. Ct. at 2547 (denying certification despite defendant's use of "objective criteria" in making promotion decisions).

Fourth, plaintiffs complain that corporate policies require that store managers promoted from within be paid less than those who are hired laterally. Appellants' Br. at 9; Am. Compl. ¶ 52, 54. This policy allegedly produces a disparate impact insofar as female store managers are disproportionately promoted in-house. Appellants' Br. at 10; Am. Compl. ¶ 55. Plaintiffs do not allege, however, that either method of selection is

61

centrally mandated, nor do they allege that any central policy is even responsible for the supposed tendency of females to be promoted from within rather than hired laterally.

Given that the alleged policy does not dictate the internal or external route of store manager selection, any disparate impact that arises will necessarily be the result of decentralized choices by middle managers. Whether women are disproportionately hired from within will vary from region to region. In short, "[i]n a company of [Family Dollar's] size and geographical scope, it is quite unbelievable that all managers would exercise their discretion in a common way without some common direction." Wal-Mart, 131 S. Ct. at 2555. Consequently, the existence of any disparate impact resulting from this particular policy will be resistant to coherent analysis at the national level.

The business justification for allotting a slight premium to lateral hires is hardly obscure. It may well take such an allowance to persuade an employee to switch companies. Furthermore, the Supreme Court has noted that the mere fact that a business practice produces some statistical disparity is, standing alone, insufficient to conclude that a class action will be viable. Id. at 2555-56. Under the lateral hire policy at issue here, for example, some middle managers will hire women from outside, or promote men from within. In other cases, the

62

hiring party may herself be female. The alleged policy could very well work to the benefit of women in certain districts. In short, the results will vary by district and by region; nationwide patterns are inadequate to justify an inference of discrimination at the subnational level. The variable results produced by this particular practice -- which is neutral on its face and supported by an obvious business justification -- are precisely what Wal-Mart envisioned as inimical to class action commonality.

The fact that each of plaintiffs' key claims ultimately reduces to an allegation of cabined discretion should be unsurprising. There is nothing inherently discriminatory about delegated discretion. Companies must rely on delegated discretion. It would be virtually impossible, as a matter of sheer practicality, for a company as extensive in scope as Family Dollar to micromanage store manager compensation via centralized policies. It is simply unfathomable that Family Dollar's corporate headquarters could afford to dictate the compensation paid to managers in each of its 7,000 stores. Some discretion is intrinsic to this type of national business. See id. at 2554 (noting that an employment policy of decentralized decision-making is "a very common and presumptively reasonable way of doing business").

63

The inference is therefore inescapable that Family Dollar relies on middle managers -- who have greater and more intimate knowledge of facts on the ground than the members of top management -- to attend to the details of store manager compensation within the broad constraints imposed by corporate headquarters. Family Dollar expects its intermediate executives to be more than mere automatons. See Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 990 (1988) (noting that "it may be customary and quite reasonable simply to delegate employment decisions to those employees who are most familiar with the jobs to be filled and with the candidates for those jobs"). Plaintiffs' inventive pleadings simply cannot disguise the economic and managerial realities associated with running a national corporation. "[L]ocal discretion cannot support a company-wide class no matter how cleverly lawyers may try to repackage local variability as uniformity." Bolden v. Walsh Constr. Co., 688 F.3d 893, 898 (7th Cir. 2012). The presence of such variability makes it difficult to establish the commonality necessary for class action treatment because, among other things, business managers in many regions and districts will exercise delegated discretion in favor of the plaintiff class.

Plaintiffs' argument, therefore, continues to boil down to the contention that an "exercise of discretion results in disparities in pay based on gender." J.A. 419. Wal-Mart, of

64

course, found challenges based on such a decision-making structure largely resistant to class action treatment. 131 S. Ct. at 2555-56. The district court nicely summarized this aspect of the futility analysis when it concluded that "the proposed amended complaint appears to be an attempt to recast plaintiffs' class claims simply to avoid dismissal under [Wal-Mart], but even the allegations in the amended complaint ultimately point to subjective, individualized decisions rather than pointing to any uniform company-wide policy that discriminates against [female] Store Managers." J.A. 417.

2.

Plaintiffs' amended complaint is deficient for an additional reason: the evidence plaintiffs have offered fails to satisfy the standards suggested by Wal-Mart. As the Court in that case made clear, "Rule 23 does not set forth a mere pleading standard." 131 S. Ct. at 2551. Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are in fact . . . common questions of law or fact, etc." Id. (emphasis omitted); see also Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013). In light of the fact that plaintiffs have already "conducted significant discovery in this and other similar cases against defendant in other jurisdictions," J.A. 415, the data that they have gathered is

65

inadequate to satisfy the evidentiary standard imposed by Wal-Mart.

Wal-Mart emphasized that "left to their own devices most managers in any corporation . . . would select sex-neutral, performance-based criteria for hiring and promotion that produce no actionable disparity at all." 131 S. Ct. at 2554. Furthermore, with respect to a large national corporation like Wal-Mart or Family Dollar, "it is quite unbelievable that all managers would exercise their discretion in a common way without some common direction." Id. at 2555. And while Wal-Mart did not foreclose the theoretical possibility that such coordinated, discriminatory, discretionary activity might one day be demonstrated, it concluded that the "statistical and anecdotal evidence" in that case fell "well short." Id.

Here, the only real evidence that plaintiffs have provided is numerical in nature, and it fails for the same reason as that in Wal-Mart. The amended complaint supplies figures purporting to show "statistically significant disparities in what Family Dollar pays men and women for the same job of Store Managers." Am. Compl. ¶ 24. Plaintiffs point to an alleged salary gap amounting to approximately $2,500 per year between 2008 and 2010, which they peg at twenty-two to twenty-three standard deviations above "what would be expected in the absence of gender-based discrimination" when "controll[ing] for non-gender

66

factors that may affect pay such as store, district, region, store type, store size, store location, store volume, education and prior work history, and length of service." Id. ¶¶ 24-27. But this lengthy enumeration of "controlled" elements itself belies plaintiffs' claim that any alleged discrepancy in store manager pay is the product of a rigid collection of centralized corporate policies.

Plaintiffs' statistical evidence is insufficient under Wal-Mart on two counts, both stemming from the fact that it is national in scope. First and fundamentally, the Supreme Court specifically underscored the "failure of inference" inherent in attempting to draw particularized conclusions from national statistical data. 131 S. Ct. at 2555. That is, "[i]nformation about disparities at the regional and national level[s] does not establish the existence of disparities at individual stores," or within individual districts, "let alone raise the inference that a company-wide policy of discrimination is implemented by discretionary decisions at the store and district level." Id. (internal quotation marks omitted); see also Bolden, 688 F.3d at 896 ("If [the defendant employed] 25 superintendents, 5 of whom discriminated in awarding overtime, aggregate data would show that black workers did worse than white workers -- but that result would not imply that all 25 superintendents behaved similarly, so it would not demonstrate commonality."); Bennett

67

v. Nucor Corp., 656 F.3d 802, 815-16 (8th Cir. 2011) ("[A] bottom-line [statistical] analysis is insufficient to demonstrate that any disparate treatment or disparate impact present in one department was also common to all the others.").

Second, nationwide data fails to account for various nondiscriminatory conditions that may have produced divergent results from one area to another. For instance, as Wal-Mart tells us, "[s]ome managers will claim that the availability of women, or qualified women, or interested women, in their stores' area does not mirror the national or regional statistics." 131 S. Ct. at 2555. The controls that plaintiffs claim to have factored into their statistical conclusions here do not account for those factors, nor could their crude statistics possibly comprehend the myriad other conceivable circumstances that may affect comparative compensation levels in specific locales.

B.

Plaintiffs have thus failed to provide "convincing proof" of any policy that discriminates in a "companywide" manner; as a result, "they have not established the existence of any common question." Wal-Mart, 131 S. Ct. at 2556-57. The amended complaint suffers from the same fatal flaw as the original, rendering plaintiffs' attempt to reboot the litigation futile, and rendering the district court's decision to refuse the amendment on that ground an entirely proper exercise of its

68

discretion.   Even without reaching the patent inadequacies of the amended complaint under Rule 23(b) -- including the obvious further difficulties raised by plaintiffs' request for backpay in light of the Court's remedial holding in Wal-Mart, 131 S. Ct. at 2557 -- the entire class action fails for a lack of commonality under Rule 23(a)(2).

It bears reemphasis that the employment decision-making structure at issue here -- in which a business articulates certain centralized policies but also imparts to mid-level managers some discretion to implement them -- is not only common to Wal-Mart and Family Dollar.  It is typical of most national corporations.  See McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 672 F.3d 482, 488 (7th Cir. 2012) (noting that large corporations may grant discretion to local managers "as a matter of necessity").  The result is a substantial variety of outcomes attributable to the disparate management philosophies, priorities, and circumstances of each decentralized decision-maker -- exactly what one would expect in a company staffed by human beings.

The majority fails even to suggest why the challenged policies might be legally suspect.  Indeed, the corporate guidelines targeted by plaintiffs -- such as the use of salary ranges, the purported bonuses for lateral hires, and the inclusion of prior experience and performance as factors in pay

69

decisions -- are among the most anodyne in the corporate world. Permitting a class action suit to proceed on such a slender basis exposes a large swath of companies to class-action liability simply for adopting perfectly ordinary, plain vanilla policies. These policies do, however, share one relevant feature: they delegate discretion.

Wal-Mart recognized the difficulty of accounting for regional discrepancies and individual exercises of discretion through the blunderbuss of class action litigation. The gravamen of that decision is that nationwide classes face a steep climb to certification under Rule 23. 131 S. Ct. at 2554 (holding that under the circumstances discussed, "[a] party seeking to certify a nationwide class will be unable to show that all the employees' Title VII claims will in fact depend on the answers to common questions"). Given the managerial nightmares encountered by district judges assigned these unwieldy pieces of litigation, no other conclusion would be possible.[2]

---

[2] The concurring opinion of my good colleague, which ignores this reality, is notable chiefly for its silences. It advances an analysis even more cursory than that of the majority on the theory that some vague, soothing assurance about ordinary Rule 15 motions will obscure the extraordinary steps that have been taken. Granted, it is in the nature of a concurrence to be brief in relative terms, but surely some revelatory engagement with appellee's claims should be forthcoming. The concurrence neglects to address which of the district court's factual (Continued)

It is also important to note that denial of nationwide class certification here would not leave plaintiffs without a path forward. Each could continue to pursue a personal claim of discrimination, as the district court made clear. J.A. 420. Or, should plaintiffs choose to take a different tack on remand, class certification could perhaps be suitable for more modest -- and thus more manageable -- groups, such as district-level

---

findings were clearly erroneous, or which of its discretionary judgments ran afoul of the abuse-of-discretion standard of review. It declines to say exactly what new information was supposedly discovered during mediation, or why that information was not known to plaintiffs' counsel as a result of their fifteen previous suits against Family Dollar. It fails to justify the irreconcilability of the various pleadings or the changed thrust of the factual allegations contained therein. It neglects to address the district court's finding that this entirely new case severely prejudiced defendant three years after the filing of the original complaint. It refuses to explain why <u>Wal-Mart</u>'s commonality holding, by its plain language, does not apply to middle managers. It further refuses to explain why 500 vice presidents and district managers who concededly made discretionary decisions within delegated ranges are anything other than middle management, or why a system in which discretion is channeled by broad corporate guidelines does not fall within <u>Wal-Mart</u>'s literal terms. It does not state why it is justifiable to rope regions and districts with progressive hiring practices into nationwide litigation, or how this national class action, with all its disparate and moving parts, is supposed to be administered, or what the district court is even supposed to do upon remand. It fails, finally, to illuminate for courts and litigants why this decision does not subject every company in America with similarly unremarkable policies to the prospect of class-action liability (and the reality of interminable class certification disputes) merely for existing. Perhaps my fine colleagues will some day provide some answers to some of these questions, but for now they are doing what football teams usually do on fourth down.

71

clusters, where the differences in the circumstances faced by each member may be less pronounced. See Bolden, 688 F.3d at 899 (denying class certification but suggesting that smaller subclasses might be certifiable). While plaintiffs have chosen to bite off more than they can chew thus far, smaller morsels may prove more palatable in the end.

### V.

In holding Wal-Mart inapplicable to the manifold discretionary decisions of middle managers, the majority has hollowed out that case. Moreover, the district court engaged in a sound exercise of discretion on any one of the three grounds commonly recognized as reasons for denying leave to amend. The majority's decision is unjustifiable under the straightforward application of governing precedent.

In a larger sense, though, the majority's ruling is more damaging even than the disregard of precedent. It impairs the judicial process in three significant ways. First, it prolongs disputes far past the point of reason. It requires companies to defend completely different cases no less than three years after the filing of the complaint. No other court has gone this far. In so doing, the majority fails to address even the rudimentary managerial realities of modern national corporations. The

72

more's the pity, because in many places and under many managers, the chief beneficiary would have been the plaintiff class.

Second, the majority pulls up curbside and dumps on the district court an utterly unwieldy, unmanageable piece of litigation. It is a truism that unpleasant tasks roll downhill, and it is also worth the observation that the majority will not have to deal with the many problems it has wrought. We use an abuse of discretion standard in this context for a reason. The district judge is best situated to make the type of determinations at issue on this appeal. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 630 (1997) (Breyer, J., concurring in part and dissenting in part) (noting in the class action context that a district court "is far more familiar with the issues and litigants than is a court of appeals"). Given the standard, this is a rude reversal, as it would be even for a trial court opinion less well reasoned than the one reversed.

Third, the majority has subverted a Supreme Court decision that, whether congenial or not, was written precisely for a dispute such as this one. We count upon district courts to faithfully apply our decisions and precedents. The Supreme Court should be able to count upon us to do the same.

I yield to no one in my respect for the truly fine judges in the majority. But let this much be clear. Even the above unfortunate consequences pale in comparison to the incentives

73

today's ruling creates for future parties.  The plaintiffs in this case played fast and loose with the district court, offering not an "amended complaint," but rather a completely contradictory one.  They assumed that the allegations in a complaint need bear no discernible relationship to any external reality but reflect only the limitless malleability of lawyers' verbal skills.  The district court recognized that the system was being gamed and moved to instill respect for the integrity of the process over which it had the duty to preside.  That we should not only reverse the trial court, but do so as clearly erroneous and an abuse of discretion, is simply wrong.

The abuse was committed on appeal.

74