IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| Luanna Scott, Shunderia Garlington, Ruth Bell, Wendy Bevis, Katherine Bracey, Ruby Brady, Marie Alice Brockway, Vickie Clutter, Diane Conaway, Judy Corrow, Traci Davis, Carol Dinolfo, Rebecca Dixon, Pamela Ewalt, Nancy Fehling, Teresa Fleming, Irene Grace, Dorothy Harson, Charlene Hazelton, Shelly Hughes, Christal J. Joslyn, Ada L. Kennedy, Margie A. Little, Carol Martin, Leanne Maxwell, Wanda Mayfield, Doris Moody, Vanessa L. Peeples, Veronica Perry-Preddie, Ruth Ellen Phelps, Sheila Pippin, Lana Radosh, Michelle Rodgers, Vada Rose, Vickey Jo Scrivwer, Linda R. Silva, Nancy Smith, Marie E. Spellissy, Judy Tidrick, Beverly L. Triplett, Debbie Vasquez, Claire White, Bonnie Williams, and Cindy Marie Zimbrich | |
| Plaintiffs, | CASE NUMBER: 3:08-cv-540-MOC-DSC JURY DEMAND |
| Family Dollar Stores, Inc., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF CONSENT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**

Plaintiffs submit this memorandum in support of their consent motion for preliminary approval of the settlement reached in this case. Specifically, Plaintiffs request that the Court preliminarily approve the parties' proposed Settlement Agreement as being sufficiently fair, reasonable, and adequate, and in the best interests of the parties and in accordance with law, subject to the right of any class member to challenge the fairness, reasonableness or adequacy of the Settlement Agreement and to show cause why it should not be approved.[1]  Defendant

---

[1] In addition, Plaintiffs' motion requests that the Court: (1) appoint Settlement Services, Inc. as Settlement Administrator to perform the duties set forth in the Settlement Agreement; (2)

1

supports the relief sought herein.

I.     INTRODUCTION

The current proceedings began more than 13 years ago when 49 female Store Managers and their counsel investigated and filed EEOC Charges which alleged a pattern and practice of discriminatory wages paid to women as a class at Family Dollar since July 2, 2002. Plaintiffs alleged that Family Dollar discriminated against female employees by paying them less than men are paid for the same job in violation of Title VII of the Civil Rights Act of 1964 and the Equal Pay Act of 1963. The EEOC investigated the alleged discriminatory wages and eventually issued right-to-sue letters which led to the filing of this case. The parties vigorously litigated the claims and defenses in this case over the last ten years, including multiple motions to dismiss the class allegations, formal and informal discovery of such allegations, an unsuccessful mediation in 2011, a renewed motion to strike the class allegations in light of the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011), briefing and arguing plaintiffs' motion to amend the class allegations to meet the requirements of *Wal-Mart*, appeal of the decision denying such amendment, briefing Family Dollar's Petition For Certiorari to the Supreme Court, extensive discovery and statistical analysis on remand, preparation of briefs and evidentiary submissions in support of class certification, arbitration and notice to the class, and a second

---

approve the form of Notice of Settlement submitted herewith; (3) direct the Settlement Administrator to mail such notice to the class members in accordance with the terms of the Settlement Agreement; (4) continue the stay of all other proceedings in the case until further Order of this Court, except as may be necessary to implement the Settlement Agreement; (5) approve the schedule of events and procedures as set forth in the Settlement Agreement for completing the final approval process; and (6) schedule a final fairness hearing for a date no earlier than 45 days after the Response Deadline (which date will be included in the Notice of Settlement), at which time the Court can consider any objections by class members to the proposed Settlement and such other arguments and facts as may be pertinent to final approval of the settlement.

round of mediation in March of this year. After hearing evidence and argument on class certification, the Court decided that the case can properly proceed as a class action, finding that:

- The number of women who are or were employed by Family Dollar as store managers is so numerous as to make joinder of all members of the class impracticable;

- There are legal questions and facts that are common to each member of the class;

- Luanna Scott's and the other named plaintiffs' claims are typical of the claims of the rest of the class;

- The "class representatives" and the lawyers representing the class will fairly and adequately represent the class's interests;

- The common legal questions and facts are more important than questions that affect only individuals; and

- Litigation as a class action will be more efficient than having separate individual lawsuits.

*Order* (ECF #252).

This is not a case in which the parties reached an early or easy settlement. Instead, this has been a hard-fought case in which both sides worked diligently to gather and interpret information and to represent their clients in discovery, in litigating class certification, in preparation for trial, and later in mediation. The Mediator determined the terms of settlement once the parties' negotiations failed for a second time.[2] The Mediator, Mark Rudy is a distinguished, highly respected professional who has had substantial experience in mediating complex class actions. The formal mediation proceedings took place for two days in March 2017 in San Francisco. After reaching an agreement, the parties continued to negotiate and finalize the procedural and logistical details needed to embody and document such agreement. From March through October, the parties communicated with Mr. Rudy separately and continued to negotiate

---

[2] The parties' first mediation occurred in 2011 with Eric Greene, a well-regarded mediator from Boston. That mediation was unsuccessful despite the parties' and mediator's best efforts.

3

until the final details of the settlement agreement were documented in the Settlement Agreement now pending before the Court.

## II. ESSENTIAL TERMS OF THE PROPOSED SETTLEMENT

The proposed settlement creates a settlement fund of forty-five million dollars ($45,000,000), which will be used to pay female store managers for alleged past losses, pay service awards to the class representatives and named plaintiffs, and pay reasonable attorneys' fees, expenses and settlement administration costs. It also includes significant prospective programmatic remedies aimed at ensuring a validated compensation system for Store Managers.

<u>Individual Monetary Payments</u>. All class members will be treated equally in the allocation and distribution of the proposed settlement fund. The allocation will be based on the number of weeks that a class member worked as a store manager at Family Dollar between July 2, 2002 and preliminary approval of the settlement agreement (the "Class Period"). The following agreed-upon point system will control distribution of the settlement funds to class members:

- All participating class members will receive two (2) points per each week worked from July 2, 2002 through December 31, 2006, one and a half (1.5) points per each week worked from January 1, 2007 through December 31, 2014, and one (1) point for each week worked from January 1, 2015 through preliminary approval of the settlement.

- The value of each individual point will be determined by dividing the Net Settlement Amount by the total points attributed to all participating class members, resulting in the "point value."

- Each participating class member's individual settlement payment will be calculated by multiplying the class member's total number of points by the point value.

Class members will be notified of their number of weeks worked as documented in Family Dollar's records. If a class member believes she worked a greater number of weeks than shown

4

in such records, she has the right to present that contention to the Settlement Administrator for determination pursuant to company records and any other proof the class member presents. The settlement will be administrated by a reliable third-party settlement administrator who will both send out the required notices to the class members and write individual checks to the participating class members.

Prospective Programmatic Relief. The Settlement Agreement also requires Family Dollar to undertake a systematic review of its process for setting Store Managers' salaries in consultation with experts in the fields of labor economics and industrial/organizational psychology. Part of this review will be based on a validation study of the criteria used to set Store Manager's starting salaries. Based on such validation study, Family Dollar will implement pay policy adjustments as necessary and appropriate within 120 days of the effective date of the Settlement Agreement. Among other changes, the revised Pay Policy will provide that exceptions be reviewed on an individual basis by a designated representative or team, including responsible HR management. Prior to implementing a revised pay policy for Store Managers, Family Dollar will make it available to Class Counsel on a confidential basis for review and provide Class Counsel with certification from a qualified expert that the pay policy, as revised, has been validated according to professional standards.

Family Dollar is also required to review the salary levels for incumbent female Store Managers based on factors which impact individual pay including, but not limited to, those identified by the parties' respective expert witnesses. Based on such review, Family Dollar may make salary adjustments to the pay of incumbent female Store Managers as it deems necessary and appropriate. Class Counsel will be provided sufficient information to allow them to review and understand the methodology used in allocating any such adjustments. Within thirty (30)

calendar days of Family Dollar's implementation of the revised pay policy, the parties shall submit a joint filing notifying the Court that the programmatic relief terms of the settlement agreement have been completed.

<u>Right To Object Or Opt-Out Or Object</u>:  Class members will have the right to object to the settlement by the deadline defined in the notice they are mailed. Any written objections must state the specific reasons for objecting, including a written statement of any legal support for such objection and copies of any papers, briefs, or other documents upon which the objection is based.  If the Court rejects such objection, the class member will be bound by the terms of the settlement and will receive payment as if she had not objected. Class members also have the right to opt out of the settlement by sending notice of opting out to the Settlement Administrator postmarked within the 30-day deadline from the date the notice was mailed.  The letter requesting exclusion must be personally signed and clearly state that the class member does not wish to be included in, or receive payment from, the settlement fund.

## III.     THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

The proposed settlement is a fair, reasonable, and adequate settlement of the parties' claims and defenses in this case. The proposed settlement was crafted to: (1) effectuate systemic change in defendants' pay system; (2) offer monetary relief that is fair to the class based on the results of extensive statistical analyses of information gathered in discovery and analyzed independently by experts for both sides; and (3) distribute such relief equally among the participating class members based on their number of weeks employed as a Store Manager since July 2, 2002. The settlement achieves a favorable result without the risks, costs, and delay of additional sustained litigation, appeals and remands.  It was negotiated after lengthy litigation of the plaintiffs' claims, including an in-person two-day mediation attended by all counsel in San

6

Francisco in March 2017.

### A. Presumption in favor of settlement.

There is a "strong judicial policy favoring settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 984 (11th Cir. 1984); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991); *US Airline Pilots Ass'n v. Velez*, 2016 U.S. Dist. LEXIS 120714, **15-16 (W.D. N.C. 2016). In evaluating the settlement agreement, "[t]he Court must be guided by 'the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement.'" *Carnegie v. Mutual Sav. Life Ins. Co.*, 2004 WL 3715446, at *17 (N.D. Ala. Nov. 23, 2004) (quoting *Bennett*, 737 F.2d at 968). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977). "Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). *In re Gen. Motors Co . Pick-u Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995): "The law favors settlement, particularly in complex cases where substantial judicial resources can be conserved by avoiding formal litigation. " *See* 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 at 11-88 (3d ed. 1992) (citing cases).

Because the district court is heavily involved in the management of the class action, and was exposed to the litigants and their strategies, positions and proofs, a district court's approval of a Rule 23 settlement will be reversed only for a clear abuse of discretion. *See*, *BankAmerica Co Sec. Litigation*, 350 F.3d at 751-52 (quoting *Elliott v. Spearry Rand Co.*, 680 F.2d 1225 (8th Cir. 1982) (per curiam)); *Isby v. Bayh,* 75 F.3d 1191 (7th Cir. 1996).

### B. Standards for determining that a proposed settlement is fair, reasonable, and adequate.

"To determine whether a proposed settlement is fair, reasonable, and adequate, the court must examine whether the interests of the class are better served by the settlement than by further litigation." Manual for Complex Litigation, Fourth, at § 21.61 at p. 309; *Bailey v. Great Lakes Canning. Inc*. 908 F.2d 38, 42 (6th Cir. 1990); *McDermott Inc. v. AmCyde,* 511 U. S. 202 (1994); *Air Line Stewards and Stewardesses Association v. Trans World Airlines*, 630 F.2d 1164 (7th Cir. 1980). "The Court's role is not to engage in a claim-by-claim, dollar by dollar evaluation, but to evaluate the proposed settlement in its totality." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 673 (S.D. Fla. 2006).

Courts primarily consider the strength of the case for the plaintiffs on the merits, balanced against the amount offered in the settlement. *Armstrong v. Board of School Directors of the City of Milwaukee,* 616 F.2d 305, 314 (7th Cir. 1980). With that in mind, the following factors are examined: "(1) the likelihood of success; (2) the range of possible recovery; (3) the point on or below the range of recovery at which settlement is fair, adequate and reasonable; (4) the complexity, expense, and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Bennett v. Behring Corp*, 737 F.2d 982, 986 (11th Cir. 1984); *Jiffy Lube*, 927 F.2d at 158-59; *Velez*, 2016 U.S. Dist. LEXIS 120714, *15 (W.D. N.C. 2016); *Synfuel Technologies Inc. v. DHL Express (USA Inc.)*, 463 F.3d 646 (7th Cir. 2006); *Armstrong,* 616 F.2d at 314.

As shown below, all six of such factors confirm that the settlement agreement reached in this case is fair, reasonable, and adequate, and should therefore be approved by the Court.

### 1. The likelihood of success at trial.

"The likelihood of success at trial is by far the most important factor when evaluating a settlement." *Knight v. Alabama,* 469 F. Supp. 2d 1016, 1032-33 (M.D. Ala. 2006). In evaluating the likelihood of success at trial, the Court should take into account the merits of the class members' claims, the defenses raised by defendant, the manageability of the trial, the risks faced by the parties, the difficulty of prevailing, and the likelihood of appeal. As Judge Conrad of this district has recently explained:

> The Fourth Circuit has established a bifurcated analysis for determining final approval of class action settlements, in which district courts are to analyze factors relating to the fairness of the settlement and factors relating to the adequacy of the settlement. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991). The Supreme Court has cautioned that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n.14, 101 S. Ct. 993, 67 L. Ed. 2d 59 (1981). Because the object of settlement is to avoid, not confront, the determination of contested issues, the approval process should not be converted into an abbreviated trial on the merits. *See Flinn v. FMC Corp.*, 528 F.2d 1169, 1172-73 (4th Cir. 1975) (noting that the settlement hearing is not "a trial or a rehearsal of the trial"). Instead, courts have consistently held that the function of a judge reviewing a settlement is to determine whether the proposed settlement is fundamentally fair, adequate and reasonable, *see United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999), "without modifying [the settlement's] terms, and without substituting its business judgment for that of counsel, absent evidence of fraud or overreaching," *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (internal quotation marks and citations omitted). Finally, "[t]here is a strong presumption in favor of finding a settlement fair that must be kept in mind in considering the various factors." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-CV-1310 (AJT/JFA), 2009 U.S. Dist. LEXIS 89136, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (internal quotation marks omitted).

*US Airline Pilots Ass'n v. Velez*, 2016 U.S. Dist. LEXIS 120714, **15-16 (W.D. N.C. 2016); *see also Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 828 (E.D.N.C. 1994) (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975)); *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88, 101 S. Ct. 993, 67 L. Ed. 2d 59 (1981).

Here, plaintiffs could spend significant amounts of time and money and recover nothing, or significantly less than the relief provided by the proposed settlement.  Likewise, Family Dollar could spend significant amounts of money and lose this case. In this circumstance, settlement is preferable to the risks of continued litigation faced by both parties. The fact that settlement allows both parties to avoid the risk and expense of further litigation is a factor in support of settlement approval.

Moreover, "victory -- even at the trial stage -- is not a guarantee of ultimate success" given the risks and expense of appeal.  *In re Milken & Assoc. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993).  Even if Plaintiffs succeed at trial, they will still face the real possibility of an appeal of both the class certification ruling and a trial verdict.  That would, at the very least, postpone any recovery or remedy for years, and could result in Family Dollar ultimately paying no damages at all.  Here, the likelihood of success at trial for either party is off-set by the risks, difficulty, and expense of further litigation.

**2.  The range of possible recovery and the point at or below the range of possible recovery at which the settlement is fair, adequate and reasonable.**

In assessing this factor, the Court should consider the damages that could be recovered at trial, plaintiffs' likelihood of prevailing at trial, and other relevant factors to determine whether the settlement is fair to the class.  *Carnegie*, 2004 WL 3715446, at *20; *see also In re Domestic Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 21 1993).  Judge Conrad recently noted that "[i]n analyzing adequacy, courts must weigh the following factors against the settlement amount: (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the

defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Velez*, 2016 U.S. Dist. LEXIS 120714 at **16-17 (relying upon *Jiffy Lube*, 927 F.2d at 159).

Here, plaintiffs sought both monetary and prospective programmatic injunctive relief. The proposed settlement provides both forms of such relief. *See DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 291 (W.D.Tex. 2007) (finding that the proposed settlement was in the best interests of the class because of the substantial and immediate benefits provided to class members, including implementation of a new policy aimed at correcting the disparate impact on minorities, the risks and length of trial in class actions, and the likelihood of appeals and subsequent proceedings if the case proceeded on the litigation track).

As already shown, the settlement provides significant non-monetary benefits to the class members through the creation and implementation of a new Pay Policy aimed at addressing the alleged disparate impact and treatment challenged in this case. *See* pp. 4-6 *supra* (describing prospective programmatic remedies). This new pay policy benefits current and future Family Dollar Store Managers and will have a positive effect for years to come. *See e.g. Numismatic Guaranty Corp. of America*, No. 06-61677-CIV, 2008 WL 649124, at * 10 (S.D. Fla. Jan. 31, 2008) ("Where, as here, the injunctive relief addresses the very practices that gave rise to the suit - and indeed are at the core of the Plaintiffs goals in pursuing the litigation – a court is justified in viewing such injunctive relief as a significant component of the settlement.").

The monetary fund is also a fair and reasonable compromise of the range of backpay calculated by each side's experts independently of one another. Plaintiffs believe that a damages award could be in the range of $38 million. Family Dollar strongly disagreed, asserting that the damages exposure, if liability was found, would be less than half of that. Family Dollar's

11

Case 3:08-cv-00540-MOC-DSC   Document 323   Filed 11/10/17   Page 11 of 18

statistical expert, Dr. Saad, asserted that, among other things, any exposure calculation should be limited to: (1) the post-2006 time period that Family Dollar used the Pay Modeler policy that is argued to be the primary basis for plaintiffs' claims in this case; and (2) limited to class members who did not sign arbitration agreements. Dr. Saad also asserted that additional non-discriminatory factors identified by the experts needed to be taken into account. In any event, these exposure estimates do not include any compromise based on risk of loss at trial or on appeal, all of which had to be considered for settlement purposes. Taking into consideration the risk of loss and the inevitable delay in recovery, plaintiffs' experts and counsel came to the conclusion that the terms of settlement fashioned by the Mediator as his own proposal should be accepted because it allowed payment of $30MM to the class as well as payment of reasonable fees, expenses and settlement administration costs agreed to by both sides.

### 3. The complexity, expense, and duration of litigation.

The complexity, expense and duration of the litigation of this case also weighs in favor of settlement. *See Carnegie,* 2004 WL 3715446, at *22 (finding the complexity, expense, and duration of continued litigation and possible appeals weigh in favor of the proposed settlement because expert testimony on complex actuarial methodologies would be mandatory and trial likely would consume several months and postpone conclusion of the action); *In re Metropolitan Life Derivative Litig.*, 935 F. Supp. 286, 293-94 (S.D.N.Y. 1996) (finding that settlement would undoubtedly be in the best interest of all the parties, in light of the effort and expense that would be required to take the case to and through trial). The circumstances here are similar to those Judge Conrad found to favor settlement approval in *Velez*, *supra*.

> The Settlement Agreement would put to final rest eight years of litigation between the East Pilots and West Pilots. These cases had been litigated with extensive motion practice by the time settlement was reached. Prior to settlement, the Parties engaged in a combination of formal and informal discovery, and

> counsel for the Parties conducted investigation relating to the potential claims and the underlying events and transactions. Although discovery has not been completed, it is clear that after numerous cases and years of litigation, the Parties are well aware of the important facts and the strength of their cases. The Parties hired an independent mediator, engaged in mediation over three days in January 2016, and continued negotiating in the weeks following the mediation sessions. It was only after those extensive negotiations that the Parties ultimately consummated the Settlement Agreement. It appears that negotiations were at arm's length, and there are no signs of collusion. Counsel for both sides have been representing their respective party in multiple actions related to these issues for many years now, and they have ample experience in the type of case at issue here. Consequently, all the fairness factors favor final approval of the Settlement Agreement.
>
> * * *
>
> It is clear, based in part on the many years of litigation amongst the Parties, that there are viable competing claims that could have been litigated over years. Each of the Parties have weighed the ultimate success on the merits and the risks of establishing liability inherent in litigation. Each party thinks its case is strong, but recognizes the difficulties in proving and defending its claims. The anticipated duration of these consolidated cases weighs heavily in favor of settlement. The Parties have been litigating for over eight years and are still in the discovery process. The ordeal of additional discovery, dispositive motions, trial, and appeal would deplete the USAPA treasury. The hemorrhaging has to stop.

*Velez*, 2016 U.S. Dist. LEXIS 120714 at **15-17.

As in *Velez*, this is a complex case in which the burden of proof shifts between the parties. On the issue of liability on their disparate impact claim, plaintiffs must prove that Family Dollar's pay system has a disparate impact on female Store Managers. If plaintiffs meet this burden, Family Dollar must then prove that the elements of the pay system are job related and consistent with business necessity. If Family Dollar is successful, plaintiffs must show that less burdensome alternative means are available.[3] Proof of these matters is complex and expensive, requiring statistical experts who are extremely expensive. The experts on both sides of this case had opposing views that were well thought out and argued. There was substantial disagreement on a number of statistical matters involved in the resulting analyses of the data. Resolution of

---

[3] A similarly complex, though substantively different, framework of proof is necessary for Plaintiffs' Title VII disparate treatment claims and EPA claims.

13

these differences would require that the Court decide between competing views on detailed and complex statistical methods and models. In addition, the Settlement Agreement spares the parties the difficulties and risks that they would have faced in litigating the issue of damages. For these reasons, neither side could be sure which view would have been ultimately accepted by the Court and jury if this case went to trial.

### 4. The stage of the proceedings at which the settlement was achieved.

In order to reach a fair settlement, the "parties must have an adequate appreciation of the merits of the case before negotiating." *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998) (quotation marks omitted). Here, the parties have had ample time and discovery to evaluate their positions in the case and believe this settlement agreement to be a fair resolution of all claims and defenses. Plaintiffs' counsel thoroughly investigated and prosecuted the merits of the claims and defenses involved in this litigation. The parties thoroughly litigated this matter, conducting dozens of fact and expert depositions, reviewing voluminous documents, time and payroll records produced by Family Dollar, and compiling and analyzing multiple expert reports, complex databases and computer programs used in the analyses of damages and statistical disparities in wages and overall compensation. Depositions included experts, named plaintiffs, 30(b)(6) corporate representatives, executive vice-presidents, human resource management, and operations management. In addition, the parties vigorously litigated certification of the class in both this Court and the Court of Appeals. The resulting settlement is the product of arm's length negotiations and was executed by experienced counsel following lengthy, contested and substantial legal and factual investigation. This factor weighs heavily in favor of the Court's approval. *See e.g, Wineland*, 267 F. R.D. at 677 ("[T]he Settlement is the product of arm's length

negotiations and, thus, is presumed to be fair and reasonable"). *See* 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* §11.41 at 11-88 (3d ed. 1992) (there is usually a presumption of fairness when a proposed settlement, which was negotiated at arm's length by counsel, is presented for approval.); *Fisher Bros. v. Cambridge-Lee Indus. Inc.*, 630 F. Supp. 482, 488-89 (E.D. Pa. 1985); *In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 838 F. Supp. 729, 738-39 (S. D.N.Y. 1993) ("courts have consistently refused to substitute their business judgment for that of counsel, absent evidence of fraud or overreaching"). "These facts suggest that the proceedings were fairly advanced, and that the parties had sufficient opportunity to evaluate the strengths and weaknesses of the case." *See Carnegie v. Mutual Sav. Life Ins. Co.*, 2004 WL 3715446, at *19 (N.D. Ala. 2004) (finding proposed settlement fair because it was reached four years after the action was commenced, following extensive discovery and filing of affidavits from experts for both parties).

### 5. There has been no fraud or collusion between the parties.

There is no basis for concern about fraud or collusion because the settlement was achieved in good faith after arms-length negotiations, intensive litigation and successive mediations. *See e.g. Ashley v. Regional Transp. Dist. & Amalgamated Transit Union Div. 1001 Pension Fund Trust*, No. 05-CV-01567-WYD-BNB, 2008 WL 384579, at *6 (D. Colo. Feb. 11, 2008) (finding that involvement by a mediator and a four month negotiation period indicated no fraud or collusion). *See* Manual for Complex Litigation, Fourth, §21.612 at p. 313-14 ("Extended litigation between or among adversaries might bolster confidence that the settlement negotiations were at arm's length.").

### 6. The substance and amount of opposition to the settlement.

It is impossible to know the extent of any opposition to the settlement prior to the final fairness hearing, but the parties do not anticipate that class members will raise significant opposition. The proposed Settlement Agreement provides for monetary compensation to all class members without them having to bear the expense, risk, delay and uncertainty of litigation, or prove their individual claims or damages. Class members who choose to opt-out of the settlement and who will not be eligible for monetary compensation as a result, lose no individual rights as a result of the settlement and are free to pursue their own individual claims for possible monetary relief in their individual capacity. In addition, the affirmative relief will benefit current and future female Store Managers and have a lasting effect. In short, the proposed Settlement Agreement gives putative class members no legitimate reason for objection. At the time of the final fairness hearing, any objections made by class members will be addressed. *Velez*, 2016 U.S. Dist. LEXIS 120714 at *18.

The notice being provided to the class includes all of the information required for Rule 23(b)(3) classes. "All that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *UAW v. GMC*, 497 F.3d 615, 630 (6th Cir. 2007) (quotation marks omitted); *Wal Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113-14 (2d Cir. 2005) ("[The settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. Notice is adequate if it may be understood by the average class member.").

The proposed notice to be mailed to all class members contains all of the elements necessary to satisfy any concerns, including: (a) the nature of the action; (b) the definition of the class certified; (c) a description of the class claims, issues and defenses; (d) the identities of the parties; (e) a summary of the terms of the proposed settlement; (f) notice that the class member may object and appear at the fairness hearing; (g) information regarding the manner in which objections can be submitted, (h) information regarding the manner in which a Settlement Class Member may opt-out of the settlement; and (i) the binding effect of the class judgment and the scope of release of class and individual claims.

Respectfully submitted,

s/Robert L. Wiggins, Jr.
Robert L. Wiggins, Jr.
rwiggins@wigginschilds..com
Ann K. Wiggins
awiggins@wigginschilds.com
Gregory O. Wiggins
gwiggins@wigginschilds.com
Rocco Calamusa, Jr.
rcalamusa@wigginschilds.com
Kevin W. Jent
kjent@wigginschilds.com
Counsel for the Plaintiffs

OF COUNSEL:
WIGGINS, CHILDS, PANTAZIS, FISHER & GOLDFARB
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205/314-0500
205/254-1500 (facsimile)

# CERTIFICATE OF SERVICE

       I do hereby certify that I have filed today, November 10, 2017, by CM/ECF the above and foregoing, with copies being served on:

Jason C. Schwartz
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202/955-8242
Fax: 202/530-9522
jschwartz@gibsondunn.com

John R. Wester
David C. Wright, III
Adam K. Doerr
Amanda R. Pickens
ROBINSON BRADSHAW & HINSON, PA
101 North Tryon Street, Suite 1900
Charlotte, NC 28246
jwester@robinsonbradshaw.com
dwight@robinsonbradshaw.com
adoerr@robinsonbradshaw.com

Ryan C. Stewart
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue N.W.
Washington, D.C. 20036-5306
Telephone: 202/955-8230
Fax: 202/831-6012
rstewart@gibsondunn.com

Michele L. Maryott
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive
Irvine, California 92612-4412
Telephone: 949/451-3945
Fax: 949/475-4668
mmaryott@gibsondunn.com

Theane Evangelis
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: 213/229-7726
Fax: 213/229-6726
tevangelis@gibsondunn.com

                                            /s/Robert L. Wiggins, Jr.
                                            OF COUNSEL