IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| Luanna Scott, Shunderia Garlington, Ruth Bell, Wendy Bevis, Katherine Bracey, Ruby Brady, Marie Alice Brockway, Vickie Clutter, Diane Conaway, Judy Corrow, Traci Davis, Carol Dinolfo, Rebecca Dixon, Pamela Ewalt, Nancy Fehling, Teresa Fleming, Irene Grace, Dorothy Harson, Charlene Hazelton, Shelly Hughes, Christal J. Joslyn, Ada L. Kennedy, Margie A. Little, Carol Martin, Leanne Maxwell, Wanda Mayfield, Doris Moody, Vanessa L. Peeples, Veronica Perry-Preddie, Ruth Ellen Phelps, Sheila Pippin, Lana Radosh, Michelle Rodgers, Vada Rose, Vickey Jo Scrivwer, Linda R. Silva, Nancy Smith, Marie E. Spellissy, Judy Tidrick, Beverly L. Triplett, Debbie Vasquez, Claire White, Bonnie Williams, and Cindy Marie Zimbrich, Individually and on behalf of the class they represent, | |
| Plaintiffs, | CASE NUMBER: 3:08-cv-540 |
| Family Dollar Stores, Inc., | |
| Defendant. | |

**PLAINTIFFS' MOTION TO APPROVE ATTORNEYS' FEES AND EXPENSES PURSUANT TO THE PARTIES' SETTLEMENT AGREEMENT**

Come the Plaintiffs and Class Counsel who, pursuant to the Parties' Settlement Agreement and this Court's Order of preliminary approval (ECF 324), move for approval of the attorneys' fees and expenses set forth in such agreement. *See*

Declarations submitted herewith. As grounds, Plaintiffs and Class Counsel rely upon the Parties' proposed *Final Order Approving Settlement, Class Counsel Fee Payment And Class Representative Service Payment* which the Parties are jointly submitting as a separate document. Movants further state the following:

1. The Court has preliminarily reviewed and approved the Parties' Settlement Agreement and scheduled a hearing on March 14, 2018 "to consider the award of attorneys' fees and expenses to Class Counsel and to consider the request for service awards to the Class Representatives and Named Plaintiffs." *Notice of Settlement*, p. 6, Sec. 10. (ECF 322, Ex. B); *Order of Preliminary Approval of Settlement Agreement* at p. 4 (ECF 324).

2. This Motion is being submitted in support of the attorneys' fees and expenses set forth in the following terms of the parties' Settlement Agreement:

> Attorneys' Fees and Costs. Family Dollar agrees not to challenge or otherwise oppose any application or motion by Class Counsel for attorneys' fees of one third of the Total Class Settlement Amount, plus the reimbursement of reasonable costs and expenses associated with Class Counsel's litigation and settlement of the Action, not to exceed One Million Dollars ($1,000,000). Court-approved Attorneys' Fees and Costs will be paid from the Total Class Settlement Amount.

*Joint Stipulation of Class Action Settlement and Release*, p. 15, ¶ 55 (ECF 322); *Notice of Proposed Settlement Agreement and Hearing* (ECF 324).

2

3. The fee of one-third of the common fund set forth in the parties' Settlement Agreement and Notice of Settlement is supported by the evidence, not opposed by Family Dollar, and not objected to by any member of the class, all of whom were sent formal notice of such fee. The Notice of Settlement approved by the Court told class members that Class Counsel "will ask the Court to award them attorneys' fees of up to fifteen million dollars ($15,000,000) and reasonable expenses of one million dollars ($1,000,000) for investigating the facts, litigating the case on behalf of the Class for the past fifteen years, negotiating the settlement, and handling all post-settlement disputes and proceedings." *Notice of Settlement*, ECF 322, Ex. B, p. 1.

4. No objection has been made to the amount of such attorney's fees set forth in the Notice to the Class and in the Parties' Settlement Agreement. *See e.g. Clark v. Experian Info. Solutions, Inc.*, 2004 U.S. Dist. LEXIS 32063, *29 (D.S.C. 2004)("Despite this notice, no Class Member has submitted any objection to an award of the fees now sought, which constitute the maximum allowed under the settlement agreements."); *Fangman v. Genuine Title, LLC*, 2016 U.S. Dist. LEXIS

3

160434, *23 (D.M.D. 2016)("'[T]he fact that no objections have been filed further suggests that the result achieved is a desirable one.'").[1]

5.  The parties' have stipulated to the fairness, adequacy and reasonableness of the agreed-upon terms of the Settlement Agreement as follows:

> <u>Acknowledgement that the Settlement is Fair and Reasonable</u>.  The Parties believe this Settlement Agreement is a fair, adequate, and reasonable settlement of the Action and have arrived at this Settlement after arm's-length negotiations, pursuant to a mediator's proposal, and in the context of adversarial litigation, taking into account all relevant factors, present and potential.  The Parties further acknowledge that they are each represented by competent counsel and that they have had an opportunity to consult with their counsel regarding the fairness and reasonableness of this Settlement.

*Joint Stipulation of Class Action Settlement and Release*, p. 21, ¶ 81 (ECF 322).

6.  The one-third fee set forth in the Parties' Settlement Agreement is consistent with the fee percentages found reasonable in similar cases and

---

[1] The Notice sent to Class Members required that [a]ny written objections shall state each specific reason for your objection." *Notice of Settlement*, ECF 322, Ex. B, p. 6, Sec. 9. The Notice also told class members that:

> Your notice of objection must be personally signed by you and include:  (a) your full name, signature, address, and telephone number; (b) a written statement of all grounds for the objection accompanied by any legal support for such objection; (c) copies of any papers, briefs, or other documents upon which the objection is based; and (d) a statement to whether you intend to appear at the Final Approval Hearing.  You will then have the right to address the Court at the Final Approval Hearing.  You may appear personally at the Final Approval Hearing, or through your own counsel, paid for at your own expense."

circumstances, particularly when the common fund has been below $50 million. *See e.g. In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (reviewing 289 class action settlements and finding an "average attorney's fee percentage [of] 31.31%" and a median value of roughly one-third.); see also Newberg on Class Actions § 15:73 (5th Ed.). Another study has found that courts consistently award between 30% and 33% of the common fund. *See Thomas v. FTS USA, LLC*, 2017 U.S. Dist. LEXIS 45217, *14 (E.D.Va. 2017). (citing Theodore Eisenberg & Geoffrey P. Miller, Attorney Fees in Class Action Settlements: An Empirical Study, 1 J. of Empirical Legal Studies, 27, 31, 33 (2004)); *see also Kidrick v. ABC Television & Appliance Rental, Inc.*, Docket No. 97–cv– 0069, 1999 WL 1027050, at *2 (N.D. W.Va. May 12, 1999) (noting that use of a percentage method of calculating attorneys' fees is favored in class action settlements where there is a common fund, and that awards of 30%, 35%, and even 50% have been held reasonable); *Anselmo v. West Paces Hotel Group, LLC*, 2012 U.S. Dist. LEXIS 164618 (D.S.C. 2012) at *3-4 ("The approximate 33% for fees provided here is reasonable in light of all pertinent factors, including precedent and beneficial results obtained."); *Reed*, 2016 U.S. Dist. LEXIS 187745 at *31 ("[I]t should be noted that the request focusing solely on the cash value of the settlement is 31% of the value, which is in line with other cases approved in South Carolina federal court."); *Savani*

5

*v. URS Prof'l Solutions LLC*, 121 F. Supp. 3d 564, 567, at *26 (D.S.C. 2015) ("[A]n award of attorney's fees of 39.57% from the Subclass recovery is fair and reasonable given the results, risks, difficulty, complexity and magnitude of the litigation, and the highly specialized expertise, time and substantial resources required to prosecute it successfully."); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 at 188.

7. The Mediator in this case, Mark Rudy, is highly regarded by the Parties and was privy to both sides' confidential assessments of the evidence and work done in this case. In his Declaration, he explains why he included a fee of one third of the common fund as part of his final Mediator's Proposal that he put forward at the end of the mediation after all other settlement efforts had failed, stating that:

> 8. As the Mediator in this case, I proposed the fee of one-third of the common fund of $45 million dollars as part of the Mediator's proposal that I made to both sides on a take-it-or-leave-it basis at the end of two days of mediation. I made the determination that one-third of the common fund would be a reasonable fee in this case based on the factors that courts normally apply in approving such a percentage-of-recovery fee, including: (1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) awards in similar cases; (5) the complexity and duration of the case; and (6) the public policy of attracting skilled practitioners to undertake cases like this on a contingent fee basis.
>
> * * *
>
> 9. Based on my knowledge of this case and my mediation experience over the last 30 years, the Class Counsel and circumstances of this case easily satisfied all six of the foregoing factors.

6

> 10. I proposed the one-third fee set forth in my mediation proposal and the Parties' Settlement Agreement based on my opinion that such fee was both reasonable and consistent with the fee percentages approved in similar cases and circumstances, particularly when the common fund has been below $50 million as here.
>
> * * *
>
> 11. In my opinion and experience, the Settlement Agreement in this case provides exceptional monetary and programmatic relief for the class. Such remedies should improve the challenged compensation policies and women's salaries as Store Managers at Family Dollar.
>
> * * *
>
> 13. * * * Given the stakes in this litigation, the complexity of legal and factual issues, and the results obtained for the class, the plaintiffs' attorneys have demonstrated an exceptional level of skill and expertise in my opinion.

*Rudy Declaration* at pp. 3-5. ¶¶8-11, 13. Two other Declarations from attorneys with special expertise and knowledge in this field of law have also attested to the reasonableness of the one third fee in the Parties' Settlement Agreement. See Declarations of Joe Sellers and Joe Whatley submitted with this Motion.

8. The reasonableness of a one-third fee in this case is based, in part, on the following seven factors that district courts in the Fourth Circuit have applied in awarding fees on a common fund basis: "(1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy." *Fangman v. Genuine Title, LLC,* 2016

7

U.S. Dist. LEXIS 160434, *22 (D.M.D. 2016) (citing *The Kay Company v. Equitable Production Co.*, 749 F. Supp. 2d 455, 464 (S.D. W. Va. 2010); *see also Jones*, 601 F. Supp. 2d at 760; *Singleton v. Domino Pizza*, 976 F. Supp. 2d at 682.

9. The foregoing factors all support the reasonableness of the requested one-third fee that is set forth in the Parties Settlement Agreement for the following reasons, among others:

    **a.** **Results Obtained:** The Settlement Agreement provides exceptional monetary and programmatic relief for the class. See Declarations of Joe Whatley, Mark Rudy, Joe Sellers and Bob Wiggins submitted herewith. The monetary value of the settlement to class members includes the future effect of the injunctive and programmatic remedies set forth in the Parties' Settlement Agreement which are designed to remedy the challenged salary and compensation policies and practices and to improve female Store Managers' salaries, raises and other compensation as compared to male Store Managers performing the same or similar job. *See* Settlement Agreement at §§ 64-68 (ECF 322); *see also Notice of Settlement* (ECF 322, Exh. B).[2]

---

2 The monetary value of the settlement to class members is not limited to the $45,000,000 paid as damages and resolution of the Plaintiffs' fees and expenses, but includes the remedial effect of the injunctive and programmatic remedies set forth in the Parties' Settlement Agreement. See Declarations of Joe Whatley, Mark Rudy, Joe Sellers and Bob Wiggins submitted herewith. The stated purpose of those remedies is to provide a new compensation system which will improve

8

**b.** **Quality, Skill and Efficiency:** The record in this case demonstrates an exceptional level of knowledge, skill and ability in litigating class claims of gender-based disparate impact and pattern-or-practice violations of Title VII of the Civil Rights Act of 1964 and the Equal Pay Act of 1963. See Declarations of Joe Whatley, Mark Rudy, Joe Sellers and Bob Wiggins submitted herewith. See also *Scott v. Family Dollar*, 733 F.3d 105 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 2871 (2014); *Order* (ECF #252, June 24, 2016). This case became even more difficult once the Supreme Court issued its adverse opinions in *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011) and *Comcast v. Behrend,* 133 S. Ct. 1426 (2013).

**c.** **Risk of Non-Payment**: Plaintiffs' counsel handled this case on an at-risk basis with no compensation or reimbursement of litigation expenses for 15 years. The hourly rate for work done in a case like the one here should be greater than the non-contingent hourly rates paid by fee-paying clients on a regular billing cycle. See Declarations of Joe Whatley, Mark Rudy, Joe Sellers and Bob Wiggins submitted herewith. Attorneys handling cases of this type are highly skilled and can attract representation of fee paying clients who need such skills on their behalf

---

female Store Managers' salaries, raises and other compensation as compared to male Store Managers performing the same or similar job. See *Settlement Agreement* (ECF 322, Ex. C); *Notice of Settlement* at p. 2 (ECF 322, Ex. B).

9

in other fields of law.  *Id.*  If the hourly rates awarded to such attorneys are less than what they can be paid in other areas of law with no contingent risk or delay, then skilled lawyers will become largely unavailable to the victims of race and gender discrimination in their employment, especially in lengthy, costly and complex actions such as the instant case.  *Id.*  "'In complex and multi-year class action cases, the risks of litigation are immense and the risk of receiving little or no recovery is a major factor in awarding attorney's fees.'" *Reed v. Big Water Resort,* 2016 U.S. Dist. LEXIS 187745 at *27-28.  "Class Counsel undertook enormous obligations and responsibilities in this litigation and produced a significant result. Without these efforts, it is highly unlikely that the class could have obtained any relief whatsoever."  *Id.* at *30.

**d.** **Difficulty and Duration:**  It is undisputed that this case was hard fought, complex and lengthy since it first began with the filing of Plaintiffs' EEOC charges nearly fifteen years ago.   See Declarations of Joe Whatley, Mark Rudy, Joe Sellers and Bob Wiggins submitted herewith. Plaintiffs' Counsel was required to devote an immense amount of time and expense to these proceedings without compensation over a long period of time.  *Id.*  The case presented novel and difficult questions that required significant discovery, motion practice and an appeal to resolve.  *Id.*  It also involved exceptional complexity and risk, particularly after

10

this Court dismissed the original class allegations and denied Plaintiffs' motion to amend the Complaint on the ground that any amendment would be futile in light of the Supreme Court's decision in *Wal-Mart, Inc. v.* Dukes, 131 S.Ct. 2541 (2011). The evidence necessary to prevail on class certification and the merits of this case involved difficult and time consuming issues of statistics and professional validation of promotional selection procedures pursuant to the Uniform Guidelines on Employee Selection procedures, multiple experts in the fields of labor economics, statistics, and industrial-organizational psychology and selection procedures, and other issues that required a series of court opinions and an appeal to sort out.   *Id.*

10.   The one-third fee provided in the Parties' Settlement Agreement is also reasonable when "cross-checked" by an appropriate lodestar multiplier that accounts for the special risks, difficulties, expertise and results obtained in this case.   See Declarations of Joe Whatley, Mark Rudy, Joe Sellers and Bob Wiggins submitted herewith. See also Manual On Complex Litigation, §14.121 at 187 ("the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases"). Each of the twelve *Johnson* factors support the amount of fees contemplated by the Settlement Agreement and Notice to the class.[3] Given the contingent nature of the representation in this case, its

---

3 The Fourth Circuit has adopted the lodestar factors identified in *Johnson v. Georgia Highway*

11

complexity and duration, and consideration of the other *Johnson* factors, a multiplier of at least 2 or 3 would be reasonable to fairly compensate Class Counsel for undertaking the risk and delay in this case that was foreseeable when it first began nearly 15 years ago. See Declarations submitted herewith; see also *Manual* §14.122 at 195-96 (stating as to common fund cases that "[t]he lodestar figure may be adjusted ... to account for several factors including ... the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, the risk of nonpayment, and any delay in payment"). Courts have generally held that lodestar multipliers falling between 2 and 4.5, or more, are reasonable in similar circumstances to those here.[4] *See e.g. DeLoach v. Philip Morris Cos.*, 2003 U.S. Dist. LEXIS 23240,*11(2003)(finding multiplier of 4.45 appropriate to compensate for the "exceptional result" achieved); Newberg on Class

---

*Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)(the "*Johnson* factors"); see also *Reed v. Big Water Resort, LLC*, 2016 U.S. Dist. LEXIS 187745 at *24-25. (D.S.C. 2016)

[4] *See e.g. Singleton,* 976 F. Supp. 2d at 689; *Fangman*, 2016 U.S. Dist. LEXIS 160434 at *36-37 ("While a lodestar multiplier of 5.6 still falls outside of this range, it is much closer than Class Counsels' requested figure and, in this case, it represents a reasonable award."); *Jones*, 601 F. Supp. 2d at 766 ("[T] his fee returns a lodestar multiplier between 3.4 and 4.3 which is closer to the middle of the range considered reasonable by courts.") (citing *Goldenberg*, 33 F. Supp. 2d at 439 n.6); *In re Cendant,* 243 F.3d at 742 ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (internal quotations and citations omitted); *In re Cardinal Health*, 528 F. Supp. 2d at 768 (finding that requested fee amount with a lodestar multiplier of 7.89 was not unreasonable "[g]iven the outstanding settlement in this case and the noticeable skill of counsel.").

Actions, Third Edition (Shepard's/McGraw-Hill 1992) §14.03 at 14-4 to 14-5 ("'Courts applying the lodestar approach will often use large multipliers or monetary enhancements of the time/rate (lodestar) calculation in order to reach fee award results comparable to percentage of recovery fees.'").

11. In the absence of the amount of fee provided by the Parties' Settlement Agreement, the lodestar would be greater than $15,000,000 based on the time expended and a multiplier of two that is consistent with the contingent risk in this case. *See* Declarations of Joe Whatley, Mark Rudy, Joe Sellers and Bob Wiggins submitted herewith. Given the extreme difficulty of this case, the time and resources expended, the fifteen-year duration and the results obtained, the hours expended in this case were reasonable. *Id.* This type of case requires an expansive commitment of time and resources that often precludes the handling of other legal business that would provide greater income on a more regular basis. *Id.* The litigation was one of unusual complexity and risk, as shown by the initial dismissal of plaintiffs' class allegations and subsequent appeal. Wiggins Childs also has certain ongoing obligations under the terms of the settlement, including the duty to represent class members after approval of the Settlement Agreement by monitoring and enforcing the injunctive, programmatic and pay equity provisions of

13

the settlement.[5] These on-going duties are likely to require significant future investments of time without any additional or independent payment for such work.

12. In addition, the expenses listed in Wiggins Childs' itemization total $1,009,867.11, but the requested reimbursement is limited to the $1,000,000 set forth in Plaintiffs' Settlement Agreement. All such charges are reasonable out-of-pocket expenses that are normally passed on to the client and are not absorbed as part of our firm's overhead. The expenses were also reasonably necessary in order to successfully prosecute this case.

**WHEREFORE**, plaintiff' counsel move for approval of attorneys' fees in the amount of $15,000,000 and reimbursement of documented expenses in the amount of $1,000,000.

---

[5] The Settlement Agreement provides as follows:

> 42. <u>Judgment and Continued Jurisdiction</u>. * * * After entry of the Final Approval Order and Judgment, the Court will have continuing jurisdiction solely for purposes of addressing: (i) the interpretation and enforcement of the terms of the Settlement, (ii) Settlement administration matters, and (iii) such post-Judgment matters as may be appropriate under Court rules or as set forth in this Settlement Agreement.

*Joint Stipulation of Class Action Settlement and Release*, pp. 10-11, ¶ 42 (ECF 322); see also Whatley Decl. at ¶16(j)("These on-going duties are likely to require significant future time investments without any additional or independent payment for such work.")

Respectfully submitted this 13th day of March, 2018.

>*/s/ Robert L. Wiggins, Jr.*
>Robert L. Wiggins, Jr., ASB-1754-G63R
>Gregory O. Wiggins, ASB-1752-I68G
>Ann K. Wiggins, ASB-7006-I61A
>Rocco Calamusa, Jr., ASB-5324-A61R
>Kevin W. Jent, ASB-0804-E61K
>Wiggins, Childs, Pantazis, Fisher & Goldfarb
>The Kress Building, 301 19th Street North
>Birmingham, Alabama 35203
>205-314-0500
>205-254-1500 (facsimile)
>
>Counsel for Plaintiffs

# CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on counsel via electronic filing with the Court's ECF system, to the following:

Jason C. Schwartz
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202/955-8242
Fax: 202/530-9522
jschwartz@gibsondunn.com

John R. Wester
David C. Wright, III
Adam K. Doerr
Amanda R. Pickens
ROBINSON BRADSHAW & HINSON, PA
101 North Tryon Street, Suite 1900
Charlotte, NC 28246
jwester@robinsonbradshaw.com
dwight@robinsonbradshaw.com
adoerr@robinsonbradshaw.com

Ryan C. Stewart
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue N.W.
Washington, D.C. 20036-5306
Telephone: 202/955-8230
Fax: 202/831-6012
rstewart@gibsondunn.com

Michele L. Maryott
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive
Irvine, California 92612-4412
Telephone: 949/451-3945
Fax: 949/475-4668
mmaryott@gibsondunn.com

Theane Evangelis
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: 213/229-7726
Fax: 213/229-6726
tevangelis@gibsondunn.com

This 13th day of March, 2018.

*/s/Robert L. Wiggins, Jr.*
OF COUNSEL